IN THE

# Supreme Court of Georgia,

AT ATLANTA.

SEPTEMBER TERM, 1879.

PRESENT—HIRAM WARNER............CHIEF JUSTICE.
L. E. BLECKLEY............ASSOCIATE "
JAMES JACKSON........... " "

THE CENTRAL RAILROAD COMPANY *vs.* MITCHELL.

1. An employee of a railroad company is not a competent juror to try a case in which the company is a party.

2. The declaration alleging that plaintiff, "in his body, was violently and grievously bruised, mangled and broken, to-wit : in and upon his head, arms, legs and body, and particularly as to the serious injury and wounding of his internal vital organs," such allegation is sufficient to permit testimony of injury to kidney, urinary organs and the nervous system.

3. A scientific expert may testify in respect to the character of cuts and embankments, slopes, etc., etc, etc., though his information about them be derived much from books.

4. The natural bias of relations, or servants, or employees, is matter for legitimate comment by counsel before the jury, whether such witnesses be introduced by one side or the other.

5. Charges of the court excepted to by parties will be construed in connection with the entire charge, and if unobjectionable when so construed, will not authorize a new trial.

6. Though the evidence on the subject of notice be conflicting, yet the court may charge on the legal effect of it if the jury believe that it was given.

7. A railroad company is under obligation to employees to observe all ordinary and reasonable precaution to keep its road in such condition as to make their passage reasonably safe, and if it neglect such ordinary and reasonable precaution, and the road becomes unsafe, and employees are thereby injured, then the company is liable for damage done by such negligence, if the injured employee be without fault.

8. Before an employee can relieve himself of the legal consequences of violating any rule of the company whatever, no matter how disconnected it may appear to be with the disaster which damaged him, he must show that his violation of the rule did not contribute at all to that disaster. Upon clear proof that it did not contribute at all thereto, his recovery will not be defeated by such harmless violation of rule. Thus, where the engineer is the plaintiff, and he permitted a brother engineer of the company to ride upon the engine with him from Bolingbroke to Macon (the rule prohibiting him from permitting any person to ride thereon), and the disaster and damage was caused by the falling in of an embankment near Macon, and it was made to appear from the testimony of both engineers that everything possible was done to avert the catastrophe, and that the presence of the passenger engineer did not. in the slightest degree, contribute to the disaster, but that the same was caused solely by the falling in of the embankment, the recovery of the plaintiff will not be defeated by his suffering the other engineer to ride on the engine with him.

9. The charge of the court being entirely unexceptionable as a whole, and perfectly fair to both parties, and the evidence being sufficient to sustain the verdict, this court, in accordance with its oft repeated ruling, will not control the presiding judge in the exercise of his discretion in overruling the motion for a new trial, based on the ground that the verdict is against the weight of the evidence.

WARNER, Chief Justice, dissented.

Railroads.   Jurors.   Evidence.   Practice in the Superior Court.   Charge of Court.   Damages.   Negligence.   Master and servant.   New trial.   Before Judge SIMMONS.   Bibb Superior Court.   April Adjourned Term, 1879.

Mitchell sued the Central Railroad for damages. It appeared that he was an engineer on defendant's road. That in a cut near the city of Macon, a large bank of dirt slid

from the side of the cut and covered the track ; that plaintiff, with the train on which he ran, came upon this obstruction, and, being unable to stop in time, an accident occurred which very seriously injured him. The main question of fact in the case was, whether the cut was properly constructed and kept by defendant or not, and whether, therefore, the slide and the consequent accident was the result of negligence or of natural causes, over which defendant had no control. There was some conflicting evidence as to whether the road-master of defendant had notice that the embankment was likely to give trouble. A conductor testified to having called the attention of the road-master to the cut generally, though not to any particular point ; he also stated that he did not apprehend any serious danger, and did not know certainly that the slide occurred at the point which had attracted his attention. The road-master denied any recollection of having had notice in regard thereto.

Another point of contest was as to the negligence or diligence of the plaintiff. Besides conflicting evidence on the subject of the speed at which he was running, etc., etc., the following occurs in his own testimony: "It is against the rules of the company to have anybody on the engine except the fireman and the wood-passer, unless one of them gets sick. It is against the rule to carry any one as a passenger on the engine. * * * There was still another man on the engine that night. It was Mr. Emerson. He got on at Bolingbroke to come to Macon to go out on his engine. I had no authority for that ; there was room in the cars for him, and there was room on the engine with me." There was no evidence indicating that this violation of the rules affected the accident, or had any influence upon it.

The jury found for the plaintiff $6,000.00. Defendant moved for a new trial on the following, among other grounds :

(1.) Because the court erred in sustaining the challenge

of the plaintiff to the juror, Henry E. Gibson, one of the regularly drawn panel of twenty-four petit jurors, on the sole ground that said juror was an employee of the defendant, it not appearing in what capacity he was employed.

(2.) Because the court erred in permitting Mitchell, the plaintiff, to testify, over the objection of the defendant, as to the injuries he sustained in his kidneys, urinary organs, bloody urinal discharges, and to his nervous system, there being nothing in plaintiff's declaration to allow or justify such proof. [The declaration contains the following : " By the said violent overturning and wrecking of the said locomotive engine and the tender and cars attached thereto, your petitioner was, without fault, carelessness, negligence, or mismanagement by, or on the part, of your petitioner, but by the fault, negligence, carelessness and mismanagement of the said Railroad and Banking Company on the said 1st day of January, 1877, and in the said county of Bibb, in his body violently and grievously bruised, mangled and broken, to-wit: in and upon his head, arms, legs and body, and particularly as to the serious injury and wounding of his internal vital organs and as to the violent straining or breaking of the thigh-bone of his left leg, and the violent tearing asunder, breaking and dislocating the joints of the bones of the knee of his left leg, and the violent tearing, mangling and breaking of the tendons, ligaments, sinews, and muscles, binding the same, whereby, etc."]

(3.)   Because the court erred in allowing the testimony of the witness, Wheeler, and all others on that point, to go to the jury and remain there as evidence, over the objection of defendant, as to what the books put down as the most valuable class of earth for embankments, or cuts, as to the character of slopes, of banks, etc., what the authorities give as the rule for construction of walls of cuts, and all the testimony of that character, on the ground that it was not original, but hearsay evidence.

[The witness testified that he was a civil engineer, had

surveyed railroads, including this particular road at the place of the accident.   He gave a considerable amount of evidence as to the depth, width, etc., of the cut.   Among other things, he testified as follows :   "The character of the soil in the ditch is mostly sand ; above the ditch it is a mixture of clay and sand—mostly clay.   The effect of water running on a sandy cut is to wash it off if there is force enough in the current to move the particles of sand.   According to the rules of civil engineering, clay is put down as having the most adhesiveness for making cuts and embankments, or some kinds of clay and sand mixed.   According to the rules given in road-building and cutting away embankments, the steepest slope that I know any authority for is half a foot horizontal to one foot perpendicular, or $\frac{3}{4}$ to one.   If that cut was twenty-nine feet deep, it ought to have a slope of nearly fifteen feet.   Where the soil is unfavorable, clay-soil underlaid with loose, sandy soil, there are various means adopted to support the walls.   Sometimes stone walls are used, and sometimes a greater slope is given.   In extreme cases supports are used.   When it will not support itself, we have to furnish support for it, where it is exposed to the action of water.   I think in such a soil a slope of one foot to one foot would be sufficiently safe.   *   *   *

"The rules for construction of cuts, etc., which I have given are found in books on engineering.   I give these rules solely from what I recollect of the books.   These rules are found in Mahan, Gillespie and Gilmore, and many others."]

(4.) Because the court erred in allowing counsel for plaintiff in the concluding argument, over the objection and protest of counsel for defendant, to comment on the evidence of Henry Burton, brought in by interrogatories by the plaintiff, and put in and used and relied on by the said plaintiff, substantially as follows :   "We had to go into the camp of the enemy to get the evidence of this witness ;

he is an employee of the defendant, all his sympathies are with the defendant, and against the plaintiff.   The evidence had to be persuaded out of him, after he had been manip- ulated by the defendant's principal employees and counsel, and with all that, they had been able to drag out of him so much of the truth, that is that he had given notice to the railroad company of the dangerous character of the cut, that the company would have trouble there."   Said counsel for the plaintiff, when interrupted by defendant's counsel with the objection that he had no right in this way to im- peach the evidence of his witness, replied that it was not his purpose to impeach this witness, they relied on his evidence in the main.

(5.) Because the court erred in charging the jury at the request of plaintiff's counsel, " that the railroad company is under obligations to its employees upon the trains to ob- serve all ordinary and reasonable precaution to keep its road in such a condition as to make the passage of such employees reasonably safe, and if the company by neglect- ing such ordinary and reasonable precautions, allows its road to be unsafe, and its employees are injured by such negligence, then the railroad is liable for the damage thus done if the employee injured was not himself at fault."

(6.) Because the court erred in charging the jury : " You may also inquire whether the plaintiff allowed unauthor- ized persons to ride on the engine with him.   If you so find, then inquire further and ascertain whether those per- sons contributed to, or caused the injury.   If they did, you would be authorized to find for the defendant.   If they did not, then you would not be authorized to find for the defen- dant on that ground.   The fault or negligence of the de- fendant must contribute to or cause the injury.   If, there- fore, you find from the evidence that anything he did on that occasion, or anything he omitted to do, contributed to or caused the injury, then you would be authorized to find him not free from fault, and your verdict should be for the . defendant.   If, on the other hand, you should believe from

the evidence that nothing he did, or omitted to do on that occasion, contributed. to, or caused the injury, that he did all that a prudent and skilful engineer could do to avoid the injury, then you would be authorized to find him free from fault."

(7.) Because the court charged that for damages resulting from defects, of which the company had notice, it would be liable.

(8.) Because the verdict was contrary to law and the evidence.

The motion was overruled, and defendant excepted.

A. R. LAWTON; LYON & GRESHAM, for plaintiff in error.

BACON & RUTHERFORD; C. J. HARRIS, for defendant.

JACKSON, Justice.

The defendant in error sued the plaintiff in error for very serious and life-long injuries to his person—so serious as wholly to unfit him for his regular business, and to disable him for all active work. The jury found six thousand dollars for the damage done him, and the defendant, the plaintiff in error here, being denied a new trial, excepted. The defendant in error was an engineer on the road, and ran the train on the occasion of the calamity, and the case involves the important question of what character of fault on his part will prevent a verdict for him, and this is the main question in the case, upon which the chief justice differs and dissents from a majority of the court. Before considering it, however, it will be necessary briefly to notice the grounds of exception to the rulings of the court.

1. We think that the employee of the company was properly rejected as a juror. To sit on the case he must be "*omni exceptione major*." The servant of the company is not. It is almost impossible, however incorruptible one may be, not to bend before the weight of interest; and the power of employer over employee is that of him who clothes

and feeds over him who is fed and clothed. Hence the common law excluded all servants, and our statutes have nowhere altered the rule, and it should not be altered. A close relative is a less dangerous juror, if not a dependent kinsman, than one who is dependent on his employer. See 3 Chit. Black., side p. 363; Bacon's Abridg. Juries, 2, 347, 5, 353; Tidd's Prac., 852, 3.

2. The declaration is drawn with much fullness and is ample to cover the proof introduced in respect to the injuries received by Mitchell.

3. The expert was competent to testify. Every expert derives much of his knowledge from books as well as from experience, and can give his opinion based upon the knowledge acquired from both sources.

4. If an employee be incompetent as a juror, an employee's interest or natural bias is matter for legitimate comment before the jury in argument by counsel. Even though introduced by the party thus commenting, it is legitimate to call attention to the bias in order to give more force to what the employee may swear against his master, just as a brother swearing against a party in that relation to him might well be considered as entitled to great credit, and when for him, to less. Not that either could be impeached by the party calling him, but the fact of relationship or obligation or service may be properly evoked by counsel with a view to strengthen or weaken the force of what is testified—the natural heightening or softening the colors of the story without impeaching the integrity of the witness.

5. The charge of the court will always be read as one whole view of the law, when set out in full in the record, and exceptions to parts of it must be considered in the light of all other parts. So construing this charge, it is unexceptionable in the opinion of the entire bench, except in the one particular wherein the chief justice dissents, and which will be hereafter considered.

6. It is for the jury to say whether or not the company

had notice of the improper structure or condition of the embankment, and if there be any evidence of such notice, the court not only has the right, but it is his duty, to charge on the legal effect of the notice, if the jury believe from the testimony, though conflicting, that it was given.

7. Common sense, as well as all law on the subject, and our own Code, make it the duty of the railroad companies to observe all ordinary and reasonable precautions to keep the road in such condition that its employees engaged in running the trains may safely discharge their duty to the company; and if, by the neglect of the company or other employees, the road becomes unsafe, the employee who is injured by such neglect, unmixed with fault in himself, may recover. Such is plainly the meaning of our own statute. Code, §§2083, 2202, 3036. It would be exceedingly hard upon one, whose duty it is to run the engine, to deny him redress, when he was faultless in his work, for casualties or injuries to him caused by the builder of the road, or the track-raiser, or other employee wholly disconnected from him and his work.

8, 9. But he must himself be without fault in the matter that brought about the calamity. And hence arises the only point on which the court is divided, and that is, whether the employee must be absolutely faultless in the discharge of his duties wholly disconnected with the catastrophe, or faultless in respect to something which contributed to produce the catastrophe. We think that our own statute settles it, and our own decisions accord with the construction we give the statute.

Section 3036 of the Code reads: " If the person injured is himself an employee of the company, and the damage was caused by another employee, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to the recovery." This means, clearly, if the damage was caused by another employee, and was *not caused by the fault or negligence of the employee hurt*, then he may recover. If he immediately

or remotely, directly or indirectly, caused it, or any part of it, or contributed to it at all, then he cannot recover; but though he had been at fault about something wholly disconnected with the transaction, or was at the time at fault about a matter that had nothing to do with the catastrophe, then he may recover. And such is the law in all the books and all the cases bearing on the point. And it must be so. Suppose the man whose duty it is to light the lamps failed to do so and was at fault, and owing to a defective embankment the cars were wrecked, and he injured, could he not recover when his failure to light the lamps had nothing upon earth to do with the catastrophe, and did not cause it or contribute a mite to it?

So in this case, the embankment caved in, filled up the road, and caused the wreck of the cars and the damage to the engineer; and it is seriously contended that he should not recover because he had a brother engineer of the same company on the engine with him, against a rule which allows no one but the engineer and fireman to ride thereon. It is doubtful whether the rule was meant to exclude another engineer of the same company. The reason and spirit of it would seem against such a construction. The engineer was taken up at Bolingbroke, a few miles from Macon. Both of them and the fireman, all swear that his presence did not contribute, and could not have contributed, to the calamity; that the engineer did his whole duty, all he could to prevent it; and yet because he permitted the other engineer to sit on the engine, it is argued that he should not recover. We cannot so see the plain letter of §3036 of our Code, nor the reason and spirit of our law.

In *Kenney vs. The Central Railroad*, 61 *Ga.*, 590, this court say in the syllabus, Judge BLECKLEY writing it and all agreeing to it, "Any *substantial* fault of an employee, however slight, *which contributed to the injury for which he sues*, will defeat his action.

So, in *The Atlanta & West Point R. R. Co. vs. Webb*, *Ib.* 586, in the syllabus again prepared by the same judge and

approved by the entire court, occur these words :   "If his
own negligence *contributed substantially to the injury*,
there can be no recovery ; the doctrine of apportionment
of damages on account of contributory negligence not ap-
plying in such a case, but the principle of section of the
Code 3036 being applicable, which section demands that
the employee shall be free from fault or negligence." Here,
as in the preceding case, not only must the fault or negli-
gence *contribute* to the damage, but it must contribute *sub-
stantially* thereto.    Such, too, is the spirit of the reasoning
in *The Central Railroad vs. Sears, Ib.* 279 ; *McDade vs.
Georgia Railroad,* 60 *Ga.,* 119, and 59 *Ga.,* 73 ; *Central
Railroad vs. Sears,* 59 *Ga.,* 436 ; *Central Railroad vs.
Raney,* 58 *Ga.,* 485 ; *Marsh vs. South Carolina Railroad
Co.,* 56 *Ga.,* 274 ; *Georgia Railroad vs. Goodwin, Ib.* 196;
*W. & A. R. R. Co. vs. Adams,* 55 *Ga.,* 279 ; *Thompson
vs. Central Railroad,* 54 *Ga.,* 509 ; *Campbell vs. A. & R.
A. L. R. R. Co.,* 53 *Ga* , 488 ; *A & R. A. L. R. R. Co.
vs. Ayers, Ib.,* 12 ; *Sears vs. Central Railroad, Ib.* 630 ;
*Georgia Railroad vs. Oaks,* 52 *Ga.,* 410 ; *East Tenn. V.
& G. R. R. vs. Duggan,* 51 *Ga.,* 212 ; *Rowland vs. Can-
non,* 35 *Ga.,* 105.    Attention is particularly called to the last
case,which is the leading case,and where Chief Justice Lump-
kin construes the Code precisely as I do here, and most em-
phatically rules that the fault or negligence of the employee
suing must *contribute* to the injury in order to  bar his re-
covery.

The issue in this case was, whether the company, through
its other agents, servants and employees, was  negligent  in
not having a proper embankment at the point where  it fell
in, and which caused the wreck, or whether it fell in  from
natural and  unforeseen  consequences.    The defendant in
error had nothing to do with the erection or  repair of the
embankment, nor did he know of its condition.    He ran by
it at night, and only at night, for months before the casualty.
The falling in of the embankment solely caused the wreck ;
whether it fell from natural causes, free from fault  by  the

company, or from the defective manner of its construction originally, or the defective manner of its repair, was the sole issue.    Mitchell had no part or lot in it, and was as blameless about it as a child unborn.

It was for the jury to say what caused it to fall—negligence of the company, or natural causes without their fault.    On this point, the testimony is conflicting, the jury settled it, and the presiding judge approves the verdict.

The charge is lucid, able, impartial and without fault so far as we can see, and the judgment overruling the motion for a new trial must be affirmed.

See further 20 Iowa, 562 ; 33 *Ib.*, 411 ; 24 Ind., 52 ; 47 Mass., 416 ; 6 Ohio St., 109 ; Sanders on Neg., 56 *et seq.*; Sher. & Red. on Neg., 32 ; Whart. on Neg., Book 11, 29, also chap. IX ; 19 Conn., 566 ; 4 Am. R., 274 ; 6 Am. R., 191.

Judgment affirmed.

BLECKLEY, Justice, concurred *dubitante*, but furnished no written opinion.

WARNER, Chief Justice, dissenting.

To entitle an employee of a railroad company to recover damages against the company for an injury sustained by him when in the service of the company, it must be shown that he was without fault or negligence on his part, at the time of the injury.    Code, §3036.    It appears from the evidence of the plaintiff himself, in this case, "that he was the defendant's engineer, running its train of passenger-cars at the time of the injury complained of, that it was against the rules of the company to have anybody on the engine except the fireman and the wood-passer ; that he took a man on the engine with him at Bolingbroke, by the name of Emerson, to go to Macon, and that he had no authority for that." The court charged the jury, amongst other things, "You may also inquire whether the plaintiff allowed unauthorized persons to ride on the engine with him.    If you so find, then inquire further and ascertain whether those persons

contributed to or caused the injury. If they did, you would be authorized to find for the defendant. If they did not, then you would not be authorized to find for the defendant on that ground. The fault or negligence of the plaintiff must contribute to, or cause the injury." That the plaintiff was at fault when he took Emerson on the engine, and who was on it at the time of the injury, in violation of the rules of the company, cannot be disputed. The rule of the company which forbid its engineer to have anybody on its engine, except its fireman and wood-passer, was doubtless intended for the better security of its own property, as well as the safety of its passengers being transported on its road, by removing all inducement and temptation from its engineer to withdraw his entire attention from his strict duty when running its engine and cars upon its railroad. If other persons were allowed to be on the engine with the engineer when running its train, talking with him, or otherwise diverting his attention from the strict line of his duty in watching the track before him, to see if there were any obstructions on it, it would not only have a tendency, but would be well calculated to contribute to the loss and injury of the company, and the injury of passengers also, and hence the adoption of the rule by the company it may fairly be presumed. At any rate, it was a rule of the company, and a violation of it by its engineer was no minor fault, but one which, it will be readily perceived, might contribute to the serious injury of the company, as well as passengers on its train. Suppose a passenger on defendant's train had been injured, and had sued the company for damages, and had proved that at the time of the injury, defendant's engineer and agent had an unauthorized person on its engine, in violation of its own rules, what reply could the defendant have made to the charge of negligence in running its train? The true law of the case is not that the fault of the employee of the company in violating its rules must contribute to the injury, but that if the fault of the employee in violating the rules of the

company *might* have contributed to the injury, then· he cannot recover, for the reason that he was not without fault on his part. The charge of the court was that the fault or negligence of the plaintiff *must* contribute to or cause the injury, whereas it is quite apparent that the fault of the plaintiff in violating the rules of the the company, as its trusted engineer, might have contributed to the injury, not only of himself, but to the injury of the company whose employee he was, as well as to the injury of the passengers on its train. The plaintiff's undisputed fault, as the company's employee, which might have contributed to produce such disastrous results, will not allow him to recover under the statute against the company, and as such employee, notwithstanding there is no evidence in the record that his fault in violating the rules of the company did contribute to his injury ; but he was nevertheless acting in open violation of the rules of the company when he was injured, and thereby exposing the company and its passengers to injury in consequence thereof, that was his admitted fault, and, therefore, he is not entitled to recover.