## McELHANNON *v.* THE STATE.

1. On the trial of an indictment for mutilating and destroying the books of a corporation with intent to defraud and injure it, persons related to its stockholders within the prohibited degree are not competent to serve as jurors; and in determining whether or not a new trial should be granted to the accused because of relationship between jurors and stockholders, the fact that the former at the time of the trial were ignorant of any relationship between themselves and some of the stockholders is immaterial.

2. The charge being as above stated, and one of the alleged motives for the perpetration of the offense being a purpose on the part of the accused to conceal a misappropriation by him of money belonging to the corporation, it was competent to show in behalf of the State that shortly before the disappearance of the books the accused had been seen gaming; but when the witness offered for this purpose declined, on cross-examination,

to answer certain pertinent questions, on the ground that so doing would criminate himself, the whole of his testimony on this subject should have been ruled out.

3. On such trial, evidence which, in connection with the statement of the accused, tended to show that there had been no misappropriation of the funds of the corporation, but that its losses had been sustained in the due course of its business, was admissible in his behalf.

4. Where, in such case, the manager of the corporation was actively pressing the prosecution and was the principal witness for the State, evidence tending to show mismanagement on his part of the affairs of the corporation, or that its losses were due to such mismanagement; or any other evidence tending to show a motive on his part for destroying the books, was admissible in behalf of the accused.

5. It was competent, on such trial, for the State to prove that the accused, who was the bookkeeper of the corporation, had given a bond for the faithful discharge of his duties as such.

6. Alleged error in rejecting a record offered in evidence cannot be considered, unless the record is either set forth or so described as to enable this court to determine whether or not it was pertinent and material.

7. The opinion of a witness that "facts" within his knowledge, in connection with what other persons "thought" of the case, pointed to the accused as the person guilty of the offense charged in the indictment, was not competent evidence against him.

Argued October 6,—Decided October 19, 1896.

Indictment for malicious mischief. Before Judge Hutchins. Clarke superior court. October term, 1895.

The indictment charged, that W. A. McElhannon, on November 23, 1893, unlawfully, wilfully, fraudulently, maliciously and feloniously did tear, burn, and by throwing in the Oconee river, mutilate and destroy the day-book, and other books of account, to wit the cash-book and ledger, of the Farmers Alliance Warehouse and Commission Company, a corporation doing business in Athens, Clarke county, with intent by so then and there destroying and mutilating said day-book, cash-book and ledger, feloniously to defraud, prejudice and injure said corporation. In a second count it charged, that he did so tear, burn and de-

43

stroy said books with intent to defraud, prejudice and in-
jure B. B. Williams, L. F. Edwards, N. D. Arnold, The
Georgia Cotton Oil Company, and A. F. Pope. There was
a verdict of guilty, and defendant's motion for a new trial
was overruled. He was the bookkeeper in the warehouse
office of the company named in the indictment, of which
warehouse, office and business Charles I. Mell was the man-
ager. The *corpus delicti* was proved; and a number of
circumstances were in evidence, tending to a greater or less
extent to fix the crime upon the defendant. The main
theory of the State was, that he, having appropriated to his
own use a large amount of money of the company (some of
which should have been paid to the five persons named in
the second count of the indictment), carried off and de-
stroyed the books to avoid discovery of his defalcation.
Defendant introduced a number of witnesses, and made
elaborate statements as to the condition and conduct of the
warehouse business. The motion for new trial contains,
in addition to the general grounds, the following:

1. Before any of the jury who tried the case was selected,
defendant's counsel requested the court to inquire of the
panel of jurors placed upon him, whether or not any of
them were stockholders in the corporation named in the
indictment (which as defendant insists was practically the
prosecutor in the case), or were related to stockholders
within the prescribed degrees; to each of which questions
the jurors who were afterwards chosen answered in the
negative, and by reason of so answering were allowed to sit
on the case by defendant. He and his counsel accepted
said answers as true and correct, and had no reason to know
or suspect the contrary until after the verdict was rendered,
having exercised all necessary and proper diligence to dis-
cover such disqualifying relationships. But several weeks
after the termination of the case, they discovered that four
named of the jurors who tried the case were disqualified by
relationship to stockholders of the corporation: one being

a brother-in-law of a named stockholder, and a second cousin of another stockholder; another being a first cousin of two named stockholders; a third being a second cousin of a named stockholder, and a grandson of another; and the fourth being a first cousin of one stockholder, a second cousin of another, and a nephew of a third. This ground is supported by a number of affidavits showing said relationships, together with affidavits of defendant and his counsel to show their previous ignorance of the same, and their exercise of diligence. The State produced the affidavits of its counsel and of Charles I. Mell, that they did not know, and did not learn until after the trial, that any of the jurors were related to any of the stockholders in the company; and an affidavit by the four jurors in question, that they did not know at the time of the trial, nor until after it was concluded and the verdict rendered, that any of their said relations or any one else related to them was a stockholder in the company; and that said relationship had no influence upon them in making their verdict, but they were governed alone by the evidence and law of the case, and no other influence had any effect with them.

2. Error in allowing N. Jankower to testify, that before the books were lost he had seen defendant gambling, and with whom he was gambling; he objecting, that whether or not he was guilty of gambling was not the issue on trial, and did not illustrate the question whether or not he stole the books; and that such evidence tended strongly to prejudice him with the jury. Further, that the evidence as to who was present and participated in said gambling would tend to criminate the witness; and though the solicitor-general did not ask the witness directly if he participated, still when the State went into a part of this transaction, defendant was entitled on cross-examination to go into the whole, for the purpose of sifting the witness, showing his opportunity to know what he was testifying, his inducement so to testify and his animus; and the court's attention was

called to the fact that defendant would insist upon the right of such cross-examination for the purpose stated, and for the purpose of using the persons claimed to be participants as witnesses to contradict, if it could be done, and unless the court would permit such examination it would be error to allow the State to give only a part of the transaction. These objections were overruled, and the witness was forced to testify that he did see gambling before the books were taken; and when on cross-examination he was asked, who defendant was playing with? was he playing with witness? the witness declined to answer, and the court refused a request to compel him to answer. Upon which rulings error is assigned.

3. After defendant had made his statement (using a memorandum and itemized and tabulated statement of the business of the company from the time of his connection with it down to the date of the loss of the books, showing as he claimed that the $3,500 claimed by manager Mell to have been taken by him, and that the books were by him destroyed to conceal such fraud, was incorrect, in that said statement, taken from the books by a bookkeeper Earhardt (who is now either in Europe or New York) showed that no such amount of money, or any amount, had been stolen from the company or from any one connected therewith, but that the very amount claimed to have been stolen by defendant was in fact lost by Mell in the running of the business and its management, and in speculation by him, as manager for and on account of the company, in both spot cotton and futures, especially in spot cottons shipped by him on account of the company to several firms in Augusta and Savannah), J. H. Rucker, the receiver for the company, was put upon the stand, and defendant desired to show by him (having previously shown the cost of said cotton from the books of the company) what gain or loss there was in said cotton shipped to these various places, and what amount of money was collected by him as receiver

from these cottons and other sources, and the amount of indebtedness he found against the company when it went into his hands; all this evidence being offered for the purpose of supporting defendant's statement, and of showing by these figures and amounts that no money had been stolen by any one from the company, but that the amount which it was claimed defendant had taken was lost by Mell as manager in the way before set forth. It was urged, that it was impossible for these facts to be shown, unless all of the figures, the winding up of the company, as well as what had taken place before the receivership, could be shown; in other words, simply to be allowed to show the cost of cotton, without being allowed to show the loss on the same, would render it impossible to figure out the whole sum and show whether money had been stolen or had simply been lost in a legitimate, perhaps, though unfortunate way, by the management or mismanagement of the affairs of the company by others over whom defendant had no control, and to contradict the evidence of Mell in stating that this money from these sales of cotton had been gotten by defendant. This evidence was pertinent and legal, a vital part of the theory of defendant; and if allowed it not only tends, but demonstrates to a mathematical certainty, that he had stolen no money, and hence could have no motive in destroying the books.

4. Error, in refusing to allow defendant to prove by five named witnesses, in connection with their other testimony, that the cotton which they stored with Mell, the manager of the company, was stored with instructions by each of them not to sell it until he had further instructions from them; but that long afterward they found out he had sold it in opposition to said instructions. This was offered for the purpose of going into the good faith of Mell in this prosecution, in which he was very prominent and vigorous, and as tending to show motive on his part for the making away or destruction of the books by him instead of by de-

fendant. The court ruled that it was competent to show that if Mell violated the instructions of commissioners in the sale of this cotton, he concealed the fact of such sales from them, or did not account for the products of such sales; otherwise it was not material; and no evidence coming within that ruling was rejected. Further error, in refusing to allow defendant to prove by H. H. Hancock, one of the directors of the company, that Mell had made a false report to the directors in August, 1893, showing much larger profit and assets than really existed, and that defendant called these directors' attention to such action on Mell's part. This was offered for the purpose of showing that, some months before the books are said to have been stolen, Mell knew that the company was in a failing condition, and that the expenses and losses by mismanagements had been more than the profits in the business, and was endeavoring to cover up said facts from the directors, and was making to them false and fallacious statements as to the solvency of the company, and that defendant in good faith then and there called their attention to such action of the manager; and because it further tended to show a reason why the manager might perhaps not seriously object to the loss of the books.

5. Error in allowing the State to put in evidence the bond of McElhannon to the company for the faithful discharge of his duty; it being objected to as immaterial and not elucidating the issue on trial, the suit against Mell having been ruled out.

6. Error in refusing to allow defendant to prove that suit was pending against C. I. Mell and his securities on his bond as manager, and to introduce the record of said suit, which showed, as defendant insists, that Mell was being sued civilly for the very thing defendant was being prosecuted for, and for the recovery of the very amount, to wit $3,500, which it was alleged by Mell defendant had taken with intent to defraud the company. The admissibility of

this evidence was urged, for the purpose of showing that Mell was endeavoring to clear his own skirts and to charge on defendant as stealing $3,500, when in fact none had been stolen by him or by any one, but had been lost by the mismanagement or misfortune of Mell in his management of the business; and for the purpose of going to his good faith and his *animus* in the prosecution of defendant, and to his credibility. In approving this ground the court states: "See the brief of evidence as to what was admitted."

7. Error in permitting H. C. Davis, the officer who arrested McElhannon, to testify in answer to the following questions: "Who first suggested the arrest of McElhannon? You suggested that they take a warrant on the evidence they had?" Answer: "Mell and I had several facts, and Captain Pope and other gentlemen connected with the Alliance warehouse thought it pointed to McElhannon; and after Bell saw the man, we thought he filled the description." The objection urged was, that this was merely hearsay and opinion evidence, not facts. (From the testimony of Bell it appears, that about the time the books were or might have been stolen from the office, he saw a man unknown to him, but of the size and general appearance of McElhannon, walking in the moonlight from the direction of the office toward the river, carrying a package under his arm.)

*Lumpkin & Burnett* and *Harrison & Peeples*, for plaintiff in error. *R. B. Russell, solicitor-general,* contra.

LUMPKIN, Justice.

The indictment in this case charged, in one count, that McElhannon, who was the bookkeeper of the Farmers' Alliance Warehouse & Commission Company, a business corporation, fraudulently mutilated and destroyed its books, with the intent to defraud and injure it. Another count alleged an intention to defraud and injure certain named

individuals. At the trial, the *corpus delicti* was shown, and a number of circumstances proved tending to fix the crime upon the accused. The theory principally relied upon by the State was: that the accused, having fraudulently appropriated to his own use a large amount of money belonging to the corporation, some of which should have been paid over to the persons named in the second count of the indictment, carried off and destroyed the books to prevent a discovery of his defalcation. There was a verdict of guilty, and the accused made a motion for a new trial, to the overruling of which he excepts. The grounds of this motion are set forth in the official report.

1. The corporation did not itself appear as prosecutor. Indeed, the accusation against the accused is in the form of a special presentment by the grand jury. It is quite reasonable, however, to suppose that the stockholders were interested in the result of the prosecution, and presumably were, to a greater or less extent, prejudiced or biased against the accused. Experience teaches that the victim of any criminal offense is rarely in sympathy with one charged with its perpetration; and it is quite certain that the former would in no case be competent to serve as a juror upon the trial of the latter. One whose property has been stolen will not be allowed to participate as a juror in the trial of the alleged thief. All this is clear enough; but the policy of the law goes further and extends the disqualification thus affecting the injured person to his kindred, by blood or marriage, within a certain prohibited degree, and this court has held that the disqualification went so far as to exclude a third cousin of the prosecutor in a criminal case from sitting on the jury. *Ledford* v. *The State*, 75 *Ga.* 856. If the corporation had, in this case, been the actual prosecutor, there would be no difficulty at all in holding that neither its stockholders nor persons related to them as closely as the jurors complained of by the plaintiff in error, would have been competent to serve upon the jury. We do

not think it makes any substantial difference that the corporation was not the formal prosecutor. It was the person injured, and therefore occupies, practically, the position of a party at interest. The ground of disqualification as to the jurors in question arises upon the fact of their relationship to persons having an interest in the case. See *Georgia Railroad* v. *Hart*, 60 *Ga.* 550. The fact that the jurors were ignorant of the relationship existing between themselves and some of the stockholders until after the trial, is immaterial. "It would be too dangerous a predecent to allow the juror to assert that he was ignorant of the relationship till after trial." *Ledford's* case, *supra*, page 858. We are aware of the difficulty of always ascertaining in advance who may be related to the stockholders of a given corporation; but the inconvenience thus arising cannot be urged as a sufficient reason for setting aside what clearly appears to be the settled policy of our law upon this subject.

2. It was competent for the State to show the fact that shortly before the disappearance of the books, the accused had been seen gaming. One of the alleged motives for the destruction of the books was a purpose on his part to conceal a misappropriation by him of the company's funds, and the fact that he was hazarding money in games of chance might throw some light upon the question as to whether or not such a motive existed. When, however, a witness offered for the purpose of proving that the accused had been guilty of gaming, on cross-examination declined to answer certain pertinent questions, on the ground that so doing would tend to criminate himself, and it appeared that the design of these questions was to show the extent of the witness's knowledge upon the subject, and, perhaps, also to test the sincerity or accuracy of his testimony, it was the right of the accused to have all of the witness's testimony on this subject ruled out. *Pinkard* v. *The State*, 30 *Ga.* 757.

3. The accused, among other things, contended that

there had been no misappropriation of the funds of the corporation, and, consequently, that there was no ground in fact for the alleged motive on his part. In support of this contention, the testimony of J. H. Rucker, which the court rejected, ought to have been admitted.

4. It appears that one Mell, the manager of the corporation, was actively pressing the prosecution, and that the conviction was largely based upon his testimony as a witness. The accused insisted that Mell had mismanaged the affairs of the corporation, had engaged in speculation with the company's funds; and that considerable losses had thereby been sustained. Evidence tending to prove the existence of these alleged facts was offered by the accused, for the purpose of showing a motive on the part of Mell for destroying the books. We see no good reason why this evidence should not have been received. Without expressing or intimating any opinion as to its probative value, we think it was the undoubted right of the accused to prove, if he could, that the crime in question had been committed by one other than himself; and it was certainly a step in this direction to show a motive on the part of that other person for destroying evidence tending to show his own unsuccessful or improper management of the company's business. The testimony of the witness Hancock was pertinent in this connection, as was also that of Rucker, mentioned above. This evidence was also relevant and admissible with reference to the credibility of Mell as a witness, as it had some bearing upon his interest in the case, and could have been urged, whether successfully or not we do not undertake to say, as manifesting a disposition on his part to shield himself from the consequences of his own alleged misconduct.

5. Certainly, there was no error in allowing the State to prove that the accused, as the bookkeeper of the corporation, had given a bond for the faithful discharge of his duties in that capacity. His exact relationship to the corporation, and the consequences which would naturally flow

from a breach of the duties he owed to it, were relevant upon the question of motive.

6. It seems that the accused desired to prove that a suit was pending against Mell and the sureties on his bond as manager, and the motion for a new trial alleges error in refusing to allow the accused "to introduce the record of said suit, which, briefly stated, showed, *as defendant insists,* that the said C. I. Mell was being sued for a breach of said bond, on the civil side of the court, for the very thing that this defendant was being prosecuted for." The record thus offered is not set forth, nor does the motion contain a sufficient description of it to enable this court to determine whether or not it was, "as defendant insists," pertinent and material. Not only is the description of the evidence offered entirely too meager, but the assignment of error upon its rejection is fatally defective, in that it does not undertake to state what *in fact* the record would actually show, but merely what the accused *contended* it showed. The effect, therefore, of the judge's certificate to the correctness of the recitals in the motion is merely to state that, so far as relates to this particular ground, certain evidence was rejected which, in the opinion of the accused would show the existence of a state of facts he desired to prove. It is apparent that this court cannot intelligently pass upon this matter; for it cannot be ascertained whether the trial judge based his ruling upon the ground that the record in question failed to show what the accused contended it did, or upon the ground that, conceding its evidentiary effect to be as was insisted, it was nevertheless irrelevant and immaterial.

7. The objection of the accused to the testimony of H. C. Davis was well taken, and ought to have been sustained. The statement of a witness that he "had several facts" which, in connection with what Captain Pope and other gentlemen "thought" pointed to McElhannon as the guilty party, was at last no more than a bare statement of an opinion entertained by the witness and the other persons re-

ferred to by him, and was certainly inadmissible for any
purpose whatsoever.                    *Judgment reversed.*