### 5187.  TEMPLES *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. The rule which entitles a party in the trial of a cause to have the jurors who are empaneled omni exceptione majores may disqualify a juror who is an employee of a corporation in which the defendant is a stockholder. A juror is objectionable propter affectum whenever it is shown that his finding may be affected by his personal interest in the result; and the probability as to whether that interest will produce bias is to be determined by the ordinary general rules of human experience.  For this

reason a person is not competent to serve as a juror in a cause when there exists any business relation between himself and one of the parties which may tend to influence the verdict.

2. An employee of a corporation in which the defendant corporation was largely interested (although the defendant was a minority stockholder), and whose sole means of income depended upon this position, which was terminable at the pleasure of his employer, would, according to ordinary human experience, be presumed to feel an interest in the retention of his situation, and a corresponding desire to avoid doing anything which might jeopardize the continuance of the relation. It could not be assumed that such a juror would be insensible to the fact that the defendant had a voice which (according to the evidence in this case), so far as the juror knew, might be controlling in the determination of that question of gravest moment to him,—whether he would retain his position if the defendant corporation owning stock in the corporation which gave him employment should consider the verdict reached by his concurrence improper or excessive.

3. The issue whether a juror is competent or incompetent propter affectum is to be determined by his mental attitude toward the cause of action and the parties thereto. The issue is partly one of fact and partly one of law, but where the evidence discloses facts from which bias or interest is to be inferred, the court must take judicial notice of the fact that the juror will most probably act in accordance with the bias disclosed. Rulings as to the competency or incompetency of jurors are based upon judicial knowledge of the improbability that a human being, even though he be a juror, will readily acquiesce in a finding adverse to his interest, his bias, or his prejudice. The presumption that a juror is competent is rebutted whenever the circumstances or influences by which he is environed and may likely be affected are not in dispute, and are such that the inherent probabilities, according to universal human experience, compel the conclusion that he is more likely to lean toward one side of the issue than toward the other.

DECIDED SEPTEMBER 11, 1914.

Action for damages; from city court of Albany—Judge Clayton Jones. August 12, 1913.

*John Henry Poole,* for plaintiff. *I. J. Hofmayer,* for defendant.

RUSSELL, C. J. There are various assignments of error in the motion for a new trial, but we are of the opinion that the determination as to the correctness of the lower court's judgment on the motion is controlled by that assignment in which complaint is made that one of the jurors was not qualified to serve.

The plaintiff brought an action for damages for personal injuries, and recovered a verdict for $2,500. One of the jurors trying the case was C. J. Whitehead, and in the 4th ground of the motion for a new trial it is alleged that Whitehead was an employee of the Atlantic Compress Company, a corporation in which the defendant,

the Central of Georgia Railway Company, owns 610 shares of stock of the par value of $100, and that the defendant owned them at the time of the trial. In the showing upon the motion it was agreed that Whitehead had been continuously employed by the Atlantic Compress Company since 1901, and that he was, at the time of the trial, the superintendent of its Albany branch office. While Whitehead owned no stock in either the Atlantic Compress Company or the Central of Georgia Railway Company, his position as employee of the former was his sole occupation, and, under the contract of employment, its duration was fixed by the pleasure of his employer. It was agreed that Whitehead would testify on the hearing (if his testimony had not been waived) that "while he was under the impression and in a general way believed that the Central of Georgia Railway Company owned stock in the Atlantic Compress Company, he had no actual knowledge of the fact, and, under his impression or belief, he did not know what amount it owned." It was also agreed that Whitehead would further testify that the facts above recited did not in any way influence him as a juror in the trial of the case.

Though the decisions of our sister States are not uniform on the subject, we find numerous holdings to the effect that an employee of a corporation owning stock in another corporation which is a party to the suit would be disqualified; in other words, holdings in support of the view that had Whitehead been an employee of the Atlantic Compress Company and that company had been a stockholder in the Central of Georgia Railway Company, he would be disqualified as a juror. In other jurisdictions it has been held that an employee of a corporation which owns stock in another and different corporation, of which he is not an employee, is not incompetent to be a juror in a case in which the latter corporation is a party. But the precise point now before us does not seem to have been adjudicated, and for that reason we deduce our conclusion, by analogy, from decisions of the Supreme Court of this State which we deem to be controlling. As to jurors the prime requisite (seemingly universal in its application in this State) is that in every trial both parties are entitled to a jury wholly composed of homines bonos omni exceptione majores. And while the court has not been slow to act upon any circumstance indicating that a party had notice or knowledge of a disqualification, and to deal with it as a waiver of

the defect, still it seems to be well settled in this State that even after verdict, where it does not appear that the complaining party had knowledge or notice of the juror's disqualification, the verdict will be set aside, when it is made to appear that, owing to the operation of bias or prejudice, the attitude of any juror negatived or nullified this essential element. In *Georgia Railroad Co.* v. *Cole,* 73 *Ga.* 713, it was said that "A jury composed of men who are not lawful men—men whose relationship to the parties rendered them incompetent as jurors—can not render a lawful verdict. If the parties consent to the jurors, or have knowledge of their incompetency, then they will be held to have waived the same. It can not be said that the defendants in error have had their case tried,—certainly not legally; and although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside." See also *Smith* v. *State,* 2 *Ga. App.* 574 (59 S. E. 311) ; *Hubbard* v. *State,* 5 *Ga. App.* 599 (63 S. E. 588). In *Central R. Co.* v. *Mitchell,* 63 *Ga.* 173, 180, Justice Jackson, in passing upon the ruling of the lower court as to the qualification of one of the jurors, who was an employee of the defendant (it not appearing in what capacity he was employed), said: "We think that the employee of the company was properly rejected as a juror. To sit on the case he must be 'omni exceptione major.' The servant of the company is not. It is almost impossible, however incorruptible one may be, not to bend before the weight of interest; and the power of employer over employee is that of him who clothes and feeds over him who is fed and clothed. Hence the common law excluded all servants, and our statutes have nowhere altered the rule, and it should not be altered." In support of this proposition the learned Justice quoted from 3 Chitty's Blackstone, 63, Bacon's Abridgment, Juries, 2, 347, 5, 353, Tidd's Practice, 853, 3. His logic was so cogent and his conclusion so well expressed that it is used as a part of the text in Judge Thompson's revision of Merriam on Juries, § 185.

In *Stumm* v. *Hummel,* 39 Iowa, 478, it was held that a person sustaining close business relations with either of the parties was incompetent to sit in a cause,—for example, a partner in business with one of the parties. And in *Hubbard* v. *Rutledge,* 57 Miss. 7, the same principle was applied where the juror was the clerk of one of the parties to a civil suit. In Merriam on Juries a New Bruns-

wick case is cited in which it was held that one in the employment of a stockholder is not disqualified from serving as a special juror in a case to which the corporation is a party; but it is só plain that this ruling is directly in conflict with the principle announced in *Central R. Co.* v. *Mitchell,* supra, that it is not even of persuasive value.

Running through the entire fabric of our Georgia decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. For instance, in *Melson* v. *Dixon,* 63 *Ga.* 686 (36 Am. R. 128), the court, in passing upon the ruling of the lower court in forcing one of the parties to exhaust his strikes upon jurors who had a pecuniary interest in the verdict and judgment, remarked that "a big part of the battle is the selection of the jury, and an impartial jury is the cornerstone of the fairness of trial by jury." The old legal maxim that the parties were entitled to jurors omni exceptione majores is again quoted in this case, and it is held that brothers and cousins of the counsel in the case, whose contract entitled them to a part of the recovery and who had a lien for their fees contingent upon recovery, were disqualified jurors, and that the defendant should not have been required to strike them. It has often been held that a juror is incompetent when related to an attorney whose fees are contingent upon recovery. *Crockett* v. *Mc-Lendon,* 73 *Ga.* 85, 86; *Roberts* v. *Roberts,* 116 *Ga.* 261 (41 S. E. 616, 90 Am. St. R. 108).

It is argued with force that since Whitehead was not employed by the Central of Georgia Railway Company, and since his employer, the Atlantic Compress Company, could not be affected by a finding against the Central of Georgia Railway Company (which owned stock in the corporation employing Whitehead), the attack upon the juror is without merit. The point to be determined in every case where a juror is attacked as being incompetent propter affectum is not only whether the juror himself is interested, but also whether he may not be affected by interest in favor of one of the parties. It is immaterial whether he is affected by a direct personal interest in the case, or an indirect interest in the result as affecting some one else—favor. Is he an impartial juror in the sense of that term as used in the constitutional provision which guarantees an impartial trial? In determining the scope of those

rulings of the Supreme Court in which it was held that jurors should be above every exception, it seems to us that great importance is to be attached to the ruling, several times made, that the juror should be free from the suspicion of bias. The use of this language would certainly seem to import that the general rule is to be liberally construed, so as to include any reasonable probability that no party will be deprived of the right of trial by an impartial jury, and not that the jury should be held to be impartial merely because, forsooth, the objection to the juror does not come strictly within the rulings in some of the adjudicated cases, or because the facts upon the issue submitted are not identical with those with which some of the adjudicated cases dealt. As we see it, the cardinal underlying principle in every adjudication in Georgia in which a juror has been held to be incompetent is that upon the discovery of facts which, without dispute, or in the court's judgment if there is conflict in the evidence, evince good reason for interest or bias in the case, the court will take judicial knowledge of the fact that in all human probability the influence disclosed would operate upon the juror and move him to act in accord therewith. It will not do to say that a juror who is related to a party is held to be incompetent merely because of the now well-settled rule upon that subject, for there was originally a reason for the rule, a reason equally applicable in dissimilar situations if the court judicially knows that the effect upon the juror's conduct will be the same as if he were related. The rule disqualifying near relatives is now so ancient (having been well settled in the common law) that we are apt to overlook the principle upon which the rule is based. The rule was no doubt crystallized by long usage, and, in so far as it is presumptive, has a history in common with many other presumptions of law, which after serving a long apprenticeship in the jury-box, finally mounted the bench. *Kinnebrew* v. *State, 80 Ga.* 239 (5 S. E. 56). A near relative is not disqualified from sitting as a juror because of any proof that he will not render a just verdict, and yet (except as to limitation in degree of relationship) the rule is not purely arbitrary. The first judge who ever decided that relationship was a disqualification worked out the problem thus: Given a litigant and a juror who are close kin; upon the general experience and observation of which the court itself has knowledge I adjudge, as a matter of law, that it is so improbable that this

kinsman, if he is permitted to be a juror, will decide against his relative that I am compelled to decide that he is not a competent juror.

None of the rules under which jurors are held to be incompetent propter affectum appear to be statutory. All of them, either directly or remotely, rest upon the proposition that after interest or bias on the part of the juror is shown, whether that interest be direct or indirect, the court will take judicial knowledge of the fact that in all human probability the juror will act in accordance with his interest or bias. When, according to universal human experience, the inherent probabilities of the circumstances by which the juror is environed and to the influence of which he is to be subjected compel the conclusion, in accord with the court's judicial knowledge, that the juror will naturally be affected by his interest, it can not be held, as a matter of law, that the juror will contribute to, or is qualified to sit in, an impartial trial as guaranteed by the constitution, certainly not if the requirement that jurors be omni exceptione majores extends to debar jurors when there is a suspicion or ground for suspicion, as has several times been held by the Supreme Court. In the interest of fair trial, if error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors, rather than in a too-technical observance of the letter of cases previously adjudicated and an attempt to bring the facts of other cases within some particular ruling.

In case Whitehead were an employee of the Central of Georgia Railway Company, he would be disqualified because of the bias presumed to arise from his connection with that corporation. *Central R. Co.* v. *Mitchell,* supra. Can he be presumed to have less interest in the result when the uncontradicted circumstances in proof, with equal reason, compel the conclusion that, by reason of the fact that he apprehended the influence of the Central of Georgia Railway Company, and feared that it might be exerted in removing him from his position if he concurred in a verdict which this stockholder of the corporation employing him might consider to be unwarranted or excessive, his interest in assuring the continuance of his employment was not less than if he had been employed by the defendant? The question to be determined, after all, is whether the relations of the juror, direct or indirect, to the parties in the cause might so reasonably be expected to produce bias or prejudice in his mind, for

or against either party, as thereby consciously or unconsciously to affect his judgment in the premises. If interest be present in the mind of the juror, it is immaterial whether the cause producing it be direct or indirect, and whether the motive, as in the present case, is one which affects him alone, and does not affect the company by which he is employed. The law holds a search-light to ascertain whether the juror is, humanly speaking, impartial; and if in the quest facts are discovered which indicate that according to all human probability the juror, even unconsciously, will be affected thereby and prevented from the impartial discharge of his duties as a trior, the real condition can not be obscured because in one case the discovery could be made by the primitive lantern of Diogenes and in the other only by the use of the Roentgen ray.

The ruling which fixes the disqualification of a juror and debars one from serving who is related to either of the parties within the ninth degree is itself not based upon the actuality of interest, but upon the probability of its existence; because, as a matter of fact, many men feel but little interest in their relatives of the more remote degrees, and are often not even acquainted with them. And so, also, many employees feel no real interest in the welfare of their employers. Always the highest test is self-interest, and where that appears it is an absolute bar to qualification for service on the jury.

> "If self the wavering balance shake,
> It's rarely right adjusted."

Under this test the inquiry should be addressed to the point whether the interest of the juror would be likely to be adversely or beneficially affected by any verdict he might render. Primarily every investigation is directed to self-interest on the part of the juror, and thereafter, as incidental to or consequent upon self-love, to disqualification on account of bias in favor of one of the litigants or prejudice against the other. It is to be borne in mind that the words "prejudice" and "bias," as used in regard to the qualification of a juror, do not bear their ordinary and popular significance. "Bias," in its legal acceptation, means only a leaning toward one of the parties rather than the other; and "prejudice" imports the formation of a fixed anticipatory judgment as contradistinguished from those opinions which may yield to evidence. If Whitehead, knowing that the Central of Georgia Railway Company was a stock-

holder in the corporation he had served for twelve years, but not knowing the quantum of its interest, could be influenced by the fear that the rendition of a verdict displeasing to a large stockholder in the corporation which employed him might imperil his livelihood, he was just as likely to believe that the Central of Georgia Railway Company owned 99 per cent. of the stock in the corporation which employed him as to have believed that it actually owned but a little more than 20 per cent. We do not mean to say that Whitehead was in fact affected by the situation disclosed in the agreed statement of facts, but no one can deny that a company which owned over a fifth of the capital stock in this corporation, whose capital was $300,000, could have exerted a large influence in controlling the appointment of a superintendent at a mere branch office, and that such influence might have been exerted had the corporation believed that the employee then occupying that position had failed to loyally maintain its interests. As was said in *Atlantic Coast Line R. Co.* v. *Bunn, 2 Ga. App.* 306 (58 S. E. 538), "An employee, whether of an individual, a partnership, or a corporation, may be, in rare instances, an impartial juror in passing upon the rights of his employers. It is possible for a judge or juror to be so absolutely fair that he could try his own cause. But there must be a rule upon the subject, and the only rule that can be adopted with safety is one which recognizes the interest to which humanity is generally susceptible and not a rule based upon rare exceptions."

As evidence that there is no rule by which the disqualification of a juror is to be determined other than the existence of such interest on the part of the juror as probably will affect his finding, thereby contributing to the advantage of one of the parties to the detriment of the other, numerous instances of interest on the part of jurors, which have been the subject of adjudication, may be cited. It has uniformly been held that sureties upon criminal recognizances or bail bonds are not qualified to sit as jurors on a criminal accusation against their principal. In *Anderson* v. *State, 63 Ga.* 675, it was held that the lower court did not err in holding one of the regular jurors incompetent to try the prisoner upon the ground that he was the prisoner's bail; and as indicated in the opinion of the court in the *Anderson* case, this ruling was based entirely upon a presumption that the surety might be influenced by

a selfish interest through fear that his principal would attempt to escape during the trial, and thereby subject him to liability upon the recognizance.

Justice Bleckley said: "Suppose the prisoner had concluded to leave the court and the country after the jury had retired, and this juror, his bail, had been of the panel charged with his case, and by any chance he had heard that his principal had gone, there would have been an improper motive to return a verdict of not guilty. Perhaps the bare risk of such a contingency would weigh upon the juror's mind, so as to incline him more to acquittal than conviction. Bail has his principal in friendly custody. While such custody continues, the bail is not a fit person to sit in judgment upon his guilt or innocence." Adapting this reasoning to the present case, the bare risk that a juror might lose his situation might weigh upon his mind, and the knowledge that the defendant had a potential interest and connection in a corporation by which he was employed might tend to incline him to hold the defendant's welfare in friendly consideration. In *Almand* v. *County of Rockdale,* 78 *Ga.* 199, the petitioners for a new road which was objected to were held to be incompetent jurors to pass upon the question of damages between the county and the objecting landowners, for one reason, because their participation would subject them to the imputation of bias in favor of one party and prejudice against the other. And Justice Hall, in concluding the opinion of the court, said, "They are not, and can not be, in the eyes of the law, indifferent and impartial jurors." See also *McKay* v. *State,* 6 *Ga. App.* 527 (65 S. E. 306). In *Lyens* v. *State,* 133 *Ga.* 600 (66 S. E. 792), one related within the fourth degree to another, who was shown to have contributed to a fund to be used in employing an attorney to aid in the prosecution of the defendant, was held to be incompetent as a juror to sit in the trial of the defendant, upon the sole ground of interest as evidenced by the employment of the attorney by the juror's kinsman, who was held to be a quasi prosecutor. In *Beall* v. *Clark,* 71 *Ga.* 818, it was held that a new trial should be granted because one of the jurors was a half-brother of a witness who had been promised by contract a position as overseer in the event his testimony resulted in recovering certain plantations, although the juror swore that he did not know that the witness, his half-brother, had any interest in the matter, and there was no circumstance to "cast

even the least shadow of doubt upon the truthfulness of his denial," other than the fact of their intimacy, friendship, and near kinship. In that case Justice Hall said: "The trial by jury can not be too carefully guarded, to protect it not only from unfairness, but also from any uncertainty on that score. Jurors should be above suspicion. Omni exceptione majores. On another hearing this wrong can be avoided. . . There can be no doubt he was an improper juror. [*Brown* v. *State*] 28 *Ga.* 439; [*Rust* v. *Shackelford*] 47 *Ga.* 538." Ever since the organization of this court it has been our endeavor to adhere rigidly to the principle so well stated by Justice Hall.

It is, of course, to be borne in mind that in the exercise of the court's discretion in excusing jurors before the trial a different rule obtains from that which is applicable when the discretion is to be exercised in awarding a new trial, when it is made to appear that the complaining party, without any express or implied waiver of his rights, has been compelled to submit his cause to an incompetent juror. From the spirit of the decisions of the Supreme Court, as well as the previous deliverances of this court upon the subject, it seems that the true rule is that when objection is made to a juror on the ground of interest, the court should either excuse him or sustain the objection, if there is reasonable ground to suspect that the juror is not impartial; and that after verdict a new trial should be granted, not, as in the former case, if there is reasonable ground to suspect bias or prejudice on the part of the juror, but if it is made to appear that in all human probability the circumstances and influences to which the juror was exposed were such as the court judicially knows were likely to have prevented absolute liberty of decision, or to have inclined him to one side of the cause rather than to the other. Before trial the judicial discretion may be liberally exercised. After verdict of course it must be more sparingly applied, because the finding of a jury should never be lightly set aside. Yet even after a verdict has been rendered, the discretion with which the court is clothed will be abused if the proof be such as to reasonably satisfy a court that any of the jurors who rendered the verdict could not, in the very nature of things, have been impartial jurors—according to the rules of human observation and experience; and the court should not refuse to award a litigant that to which he was entitled, and of which he had been

deprived in the first instance—a fair and impartial trial. Before the selection of the jury is completed, the discretion of the court can frequently be used for the advancement of substantial justice, even if there be no strictly legal reason for sustaining a challenge, or when the court, as a trior, might not be compelled to adjudge the juror incompetent under the strict rules of law. As was said by Valliant, J., in Glasgow *v.* Metropolitan Street R. Co., 191 Mo. 356 (89 S. W. 917), in ruling that while the court was right in overruling a challenge, it exercised its discretion wisely in excusing the juror: "The authority of the court in such case is not limited to a decision of the strict legal question of the qualification of a juror; it is a discretion to be exercised in the administration of justice, in which it may excuse a juror who, although not legally disqualified, yet whose sitting is reasonably liable to fill either party with an apprehension of unfairness. A court, in the exercise of that discretion, will not attempt to allay an unreasonable suspicion, but when it can remove a cause of reasonable apprehension on the one side without injuring in any degree the rights of the other, or giving the other cause for similar reasonable apprehension, it is the right and duty of the court to do so; and when in that respect the court exercises a sound judicial discretion, its ruling will not be disturbed. The trial court stands closer to the source of justice than any other tribunal. Upon the trial judge the heaviest responsibility rests, because much of the administration of justice depends on the wise exercise of a discretion that the law has reposed in him alone." In *Jacobs* v. *State,* 1 *Ga. App.* 519 (57 S. E. 1063), this court adhered to the rule laid down in *Beall* v. *Clark,* supra, and held that "it is the duty of a trial court to see that defendants in criminal cases are tried by a jury such that not even the suspicion of bias (leaning) or prejudice (prejudgment) can attach to any member thereof." The juror in that case (a prosecution for vagrancy) was a witness for the State in another vagrancy case against the same defendant, of such a nature as insensibly to affect the mind of the juror, because facts he knew in the one case of vagrancy would probably bear on the other charge of vagrancy, and we held that while the fact that one is a witness will not disqualify him as a juror, still, under the facts stated, the juror would very likely be prejudiced against the defendant, and was therefore an incompetent juror.

It is true that in *McElhannon* v. *State,* 99 *Ga.* 672 (26 S. E.

501), and subsequently, the Supreme Court held that the fact that a juror may not know of his disqualification, especially that caused by relationship to one of the parties, is immaterial; but the reason for this ruling is apparent when we consider that it would be contrary to sound public policy to permit testimony in denial of a fact which every one must be presumed to know,—such as one's relationship to others closely connected to him by affinity or consanguinity. In the *McElhannon* case, however, it was held that jurors related to certain stockholders in a corporation, the books of which the defendant was charged with mutilating, were incompetent jurors,—this too when the corporation was not the prosecutor; and necessarily, because the jurors must be presumed to be affected by an interest in their relative's success in the prosecution. For this reason the *McElhannon* case falls under the general principle already announced, to wit, that a juror in Georgia is disqualified and incompetent whenever it plainly appears that there is a greater probability that he will be influenced in his finding as a juror, by reason of the peculiar circumstances by which he is environed, than that he will rise superior to those circumstances and his action will not be affected thereby. The decision in that case, as in all other cases where it has been held that the juror was disqualified on account of relationship, proceeds on the theory that the court judicially knows that there is greater probability that one will decide a cause in favor of his relative than consent to a finding inimical to his relative's interests. The disqualification is more pronounced when the juror's probable decision depends upon his personal, individual interest rather than that of his friend or kinsman; and for this reason, where it is plain that the juror may have been affected by the apprehension that his own interests would be affected either favorably or prejudicially, by the rendition of one verdict rather than another, he is not a competent or qualified juror. Both interest and bias are disqualification propter affectum; and hence the subject of disqualification and its probable effect can be inquired into after verdict. *Gormley* v. *Laramore,* 40 *Ga.* 254.

Sir Edward Coke stated that relationship in any degree was sufficient to disqualify a juror. Co. Litt. 157*a*; *Watkins* v. *State,* 125 *Ga.* 144 (53 S. E. 1024). In the recent case of *Henderson* v. *Maysville Guano Co.,* ante, 69 (82 S. E. 588), we held that a juror who was brother-in-law of a member of a partnership owning stock

in the corporation which was the plaintiff in the suit was legally incompetent to sit in the trial of a case in which the corporation was suing upon a note, and that the competency of this person to serve as a juror was not affected or restored by reason of the fact that his brother-in-law had been adjudicated a bankrupt and presumably the stock in the plaintiff corporation had been transferred to the trustee in bankruptcy. Our ruling was based upon the fact that the juror Pittman would be presumed to feel an interest in the payment of the debts of his brother-in-law, Boyd; that the stock would be appropriated to that purpose by the proceedings in bankruptcy, and that Boyd (and through him the juror Pittman) would naturally be interested in the welfare of the Maysville Guano Company, the plaintiff in the suit, because upon the success of the guano company would depend the value of Boyd's stock, and also the amount the stock would contribute toward the payment of Boyd's debts. It would seem that the interest of the juror Whitehead, in the present case, is more pronounced, and certainly more personal, than the interest of the juror Pittman in the case of *Henderson* v. *Maysville Guano Co.,* supra. The competency of the jurors in both cases is to be determined not by what may be the actual facts in either but by applying the doctrine of probabilities to both of these cases, and to all other cases. Certainly the juror Whitehead could only have been influenced by one or the other of two motives,—the one to discharge impartially his duties as a juror, totally oblivious to any consequences which might affect him, or the motive of preserving his own interest and making sure of his position, by inducing his fellow jurors to find in favor of the corporation which, so far as he knew, owned a controlling interest in the corporation which employed him, or to reduce the finding against it to the lowest amount possible, if he could not succeed in inducing his fellow jurors to find in the defendant's favor.

While it is the general rule that where human conduct is susceptible of two constructions, it shall be given that construction consistent with fair and honest dealing, still the rule applied when the probable motive of a juror is under investigation, as pointed out in the *Henderson* case, supra, is that "if more than one motive appears, and there is uncertainty as to which interest, if any, may affect the juror, there is no less reason for his rejection than if his particular bias were clearly shown; the purpose of the law being to

provide for a trial by jurors altogether impartial." Jurors should be free from any objection which rests upon probable interest.

From the incompetency of the juror it has resulted that the trial was nugatory; and, as already remarked, a consideration of the remaining assignments of error would seem unnecessary, because the alleged errors are not likely to recur upon another trial. However, it is perhaps not inappropriate to say, in passing, that there appears to be merit in the assignment of error in which complaint is made of the court's charge on the necessity of the plaintiff's being free from fault in order to entitle him to recover. The rule which is stated in *Central R. Co.* v. *Mitchell,* 63 *Ga.* 173, and reiterated in *Central Railroad* v. *DeBray,* 71 *Ga.* 423, is that "if the damage was caused by another employee, and was not caused by the fault or negligence of the employee hurt, then he may recover." And Justice Blandford proceeds to say (p. 425): "It would seem to be axiomatic, if plaintiff has shown defendant to have been negligent, that to defeat plaintiff it must be shown that he was likewise negligent or at fault. . . When plaintiff has shown injury to himself, without fault on his part, it would be incumbent on defendant to show that the injury did not result from the want of ordinary and reasonable care and diligence on the part of its servants and agents. [*Atlanta & Richmond Air Line R. Co.* v. *Campbell*] 56 *Ga.* 586; [*Central R. Co.* v. *Kelly*] 58 *Ib.* 107; [*Central R.* v. *Kenney*] 58 *Ib.* 487." The act of 1909 (Civil Code, § 2783) relieves the employee from proving his freedom from fault, but contributory negligence not amounting to want of ordinary care may diminish his recovery. *Walton* v. *G., F. & A. Ry. Co.,* 12 *Ga. App.* 106 (76 S. E. 1060).

> *Judgment reversed. Roan, J., absent.*