### 5379.   GRIFFIN *v.* THE STATE.

1. "Properly construed, Penal Code (1910) § 204, which provides for raising a presumption of fraud against the president and directors of an insolvent bank chartered in this State, is not violative of the fourteenth amendment of the constitution of the United States on the ground that it abridges the privileges and immunities of citizens of the United States, or deprives the president and directors of an insolvent bank of the equal protection of the laws, or deprives them of life, liberty, or property, without due process of law, on the ground that similar provisions have not been made in regard to the president and directors of other corporations than banks."

" (a) That section is not violative of the fourteenth amendment of the constitution of the United States for any of the reasons set out in the first question by the Court of Appeals." *Griffin* v. *State*, 142 *Ga.* 636 (83 S. E. 540).

2. "The fifth amendment of the constitution of the United States is not a limitation upon the power of the States, but operates upon the national government only. Accordingly section 204 of the Penal Code is. not invalid as being violative of that amendment." Id.

3. "Penal Code (1910) § 204 is not violative of article 1, section 1, paragraph 3, of the State constitution, which declares that 'no person shall be deprived of life, liberty, or property, except by due process of law.' " Id.

4. "Within the meaning of Penal Code (1910) § 204, the insolvency of a bank is that condition in which its entire property and assets are insufficient to pay all of its debts."

" (a) If the entire property and assets of a bank are sufficient to discharge its liabilities, it is not insolvent within the meaning of Penal Code

(1910) § 204, although it may not be able to pay its debts immediately as they become due, or to pay its depositors on demand."

"(b) Civil Code (1910) § 2306, which provides for the winding up of a bank by the State bank examiner under certain circumstances therein declared, does not furnish a definition of insolvency to be applied in construing Penal Code (1910), § 204." Id.

5. The uncontradicted evidence established the fact of the incorporation of the bank and the issuance of a charter by the secretary of State in accordance with law, and the trial judge was authorized to take judicial cognizance of the fact that such an institution was a "chartered bank," within the meaning of section 204 of the Penal Code. The court therefore did not err in charging the jury that the bank was a "chartered bank" within the meaning of that section.

6. The court did not err in not charging the jury that if the corporation operated and did business as a trust company as well as a bank, the defendant could not be convicted if the insolvency was caused by its doing business as a trust company.

DECIDED DECEMBER 24, 1914.

Indictment for felony; from Clarke superior court—Judge Brand. November 3, 1913.

*Holden & Shackelford, Hamilton McWhorter Jr., W. W. Armistead, George C. Thomas, T. J. Shackelford,* for plaintiff in error.

*John B. Gamble, solicitor-general, Cobb & Erwin,* contra.

WADE, J. J. W. Griffin was indicted under section 204 of the Penal Code of 1910, as president of the Athens Trust and Banking Company. The indictment was as follows: The grand jurors, etc., "in the name and behalf of the citizens of Georgia, charge and accuse J. W. Griffin with the offense of felony, for that the said J. W. Griffin did, on the first day of January, 1912, in the county aforesaid, with force and arms and unlawfully, being then and there the president and director of the Athens Trust and Banking Company, a chartered bank, incorporated under the laws of said State, and as such officer and director of said chartered bank, he being by law then and there charged with the fair and legal administration of its affairs, the said Athens Trust and Banking Company, then and there pending and during the said official charge and responsibility of said J. W. Griffin, did then and there be and become fraudulently insolvent, said insolvency then and there having resulted from fraud and having been brought about by fraud and having originated in fraud, contrary to the laws of said State, the good order, peace and dignity thereof." To this indictment the defendant interposed a demurrer, and to the order overruling the demurrer he filed exceptions pendente lite. The

case proceeded to trial and the trial resulted in a verdict of guilty. His motion for a new trial was overruled, and to the order overruling the motion, as well as to the order overruling the demurrer, he excepted.

The first seven grounds of the demurrer complain that the indictment sets forth no offense under the laws of Georgia, because it fails to charge that the Athens Trust and Banking Company became insolvent by reason of any fraud of the defendant; and because it fails to allege in what the fraud therein referred to consisted. In reply to these grounds of the demurrer, it is sufficient to say that the indictment charged not a common-law but a statutory offense, and charged the offense in substantially the words of the statute (Penal Code, § 204) ; and no more was required, since the vital averments made were enough to put the accused on notice as to the nature of the offense charged against him, and to thus enable him to prepare for trial. As stated in *Anderson* v. *State, 2 Ga. App.* 1 (58 S. E. 401), "An indictment is sufficient which states the offense in the terms or language of the statute, or so plainly that the nature of the offense charged may be easily understood by the jury ;" and this is merely a restatement of section 954 of the Penal Code. See also *Stoner* v. *State, 5 Ga. App.* 716-717 (63 S. E. 602). In United States *v.* Simmons, 96 U. S. 360 (24 L. ed. 819), it was said: "Where the offense is purely statutory, having no relation to the common-law, it is, as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter." It is fundamental in the law of criminal procedure that the indictment must with reasonable certainty apprise the defendant of the nature of the accusation against him, in order that he may be able to properly prepare his defense, and plead the judgment finally rendered, as a bar to any subsequent prosecution for the same offense, and if the indictment be not so framed, it will be adjudged defective, notwithstanding it may follow the language of the statute, since all the material facts and circumstances included in the definition of a statutory offense must be stated and no essential element of the crime can be omitted. In the case of *Youmans* v *State, 7 Ga. App.* 101-102 (66 S. E. 383), the indictment simply charged the defendant with the "offense of a felony, for that the

said George R. Youmans, on the twenty-third day of November, in the year of our Lord, one thousand nine hundred and seven, in the county aforesaid, with force and arms and unlawfully, being then and there the president of the Bank of Waycross, a chartered bank incorporated under the laws of said State, and, as such officer of said chartered bank, he being by law charged with the fair and legal administration of its affairs, the said Bank of Waycross, then and there pending and during the said official charge and responsibility of the said George R. Youmans, did then and there be and become fraudulently insolvent, contrary to the laws of said State, the good order, peace and dignity thereof." The indictment in the present case, as in the *Youmans* case, supra, alleged that the bank "did then and there be and become fraudulently insolvent," but in this case there was added thereto the following: "said insolvency then and there having resulted from fraud and having been brought about by fraud and having originated in fraud, contrary to the laws of said State," etc. It will be seen that these additional words are merely surplusage and simply amplify or state in a different way the material allegation made in that case, that the bank in question "did then and there be and become insolvent;" and since the indictment in the *Youmans* case was practically identical with the indictment in this case, and the indictment therein was held by this court to be valid and sufficient, the objections above referred to are without merit.

The grounds of the demurrer from 8 to 12 inclusive were submitted by this court to the Supreme Court for determination, since constitutional questions were raised thereby, and, while this court as then constituted was firmly of the opinion that the actual questions involved had in effect been already determined by past rulings of the Supreme Court, and still adhered to the views expressed in the *Youmans* case, supra, which practically covered the points thus raised, we nevertheless deemed the questions raised by the demurrer as to the constitutionality of section 204 of the Penal Code to be of such wide and far-reaching importance that we concluded that a direct submission of the matter to the Supreme Court was demanded by considerations of public policy and in order that the questions might be determined by an absolutely binding ruling from the only court having the ultimate power to authoritatively settle the points involved. The court held: "Properly construed,

Penal Code (1910), § 204, which provides for raising a presumption of fraud against the president and directors of an insolvent bank chartered in this State, is not violative of the fourteenth amendment of the constitution of the United States on the ground that it abridges the privileges and immunities of citizens of the United States, or deprives the president and directors of an insolvent bank of the equal protection of the laws, or deprives them of life, liberty, or property, without due process of law, on the ground that similar provisions have not been made in regard to the president and directors of other corporations than banks." It also held specifically that the section in question is not violative of the 5th and 14th amendments to the constitution of the United States for any of the reasons assigned in the demurrer of the defendant and certified to that court; and that the same section is not violative of article 1, section 1, paragraph 3, of the State constitution, which declares that "no person shall be deprived of life, liberty or property, except by due process of law." 142 *Ga.* 636 (83 S. E. 540). The trial court therefore did not err in overruling the grounds of the demurrer which set up that the act upon which the indictment was based was unconstitutional and void.

Besides the usual general grounds of the motion for a new trial, there was an amendment adding 59 special grounds, which are set forth elaborately, argumentatively, specifically, and with great particularity, in 47 typewritten pages. To take up and discuss each and all of these special grounds of the motion would consume at the hands of this court (overburdened as it is with many other cases equally important, involving human liberty, and hundreds of cases involving rights of property) more time than the court can legitimately devote to the consideration of this particular case in justice to others also depending upon us for solution. We will, therefore, omit any discussion of many of the special grounds set out in the amendment to the motion, since they appear to us to be either without substantial merit, or to involve alleged intimations of opinion by the trial judge, or other errors in the conduct of the trial which in all probability will not again arise, or questions which appear to be settled in effect by the decision of the Supreme Court, either on the constitutional points raised by the demurrer to the indictment, or by the construction, by that court, of the word "insolvency," as employed in section 204 of the Penal Code

of 1910. In many of these exceptions short excerpts from the charge of the learned trial judge are subjected to extremely nice verbal criticism, so that we are frank to admit that to satisfactorily determine in every instance whether there was or was not some slight theoretical merit in the exceptions would require not only one possessed of the combined legal acumen of a score of "Philadelphia lawyers," but one by nature so superlatively blessed with powers of logical analysis that

"He could distinguish and divide
A hair 'twixt south and southwest side."

This much is said in no spirit of criticism of learned counsel who have so ably presented the case for the defendant, and whose indefatigable industry and entire loyalty deserve encomium rather, but merely by way of explanation, and to some extent by way of apology for our failure to discuss in detail (though we have carefully and laboriously considered) each and every point raised by the motion for a new trial. Then too, in the view we take of the decision of the Supreme Court as to the meaning of the word "insolvency," as used in section 204 of the Penal Code of 1910, and considering the record in the case in the light of the definition given to that word by the Supreme Court, it appears to us that a discussion of nearly all of the points raised in the motion for a new trial would be merely academic, since that ruling must necessarily result in a new trial for the defendant, and any discussion of most of these various exceptions would be of no especial advantage in another trial of this case.

Coming, therefore, to the consideration of those questions which we do consider vital in the determination of the case as now before us, and also of probable materiality on another trial, we take up these in the order of their relative importance. In the 22nd ground of the motion for a new trial, the plaintiff in error complains that the court erred in charging the jury as follows: "A bank is solvent when it has enough assets to pay, within a reasonable time, all of its liabilities through its own agencies, and is insolvent when unable to meet its liabilities as they become due in the ordinary course of business, or, in shorter terms, when it can not pay its depositors on demand in accordance with its promise." In the 23rd ground the plaintiff in error complains that the court erred in charging the jury as follows: "In short, as employed in

the statute with reference to banks, the word insolvent means a present inability to pay depositors as banks usually do, and meet all liabilities as they become due in the ordinary course of business."

Although under the ruling of this court in the *Youmans* case, supra, this charge was clearly erroneous, we nevertheless certified the following question to the Supreme Court: "Is a bank insolvent, within the meaning of section 204 of the Penal Code, if the entire property and assets of the bank are sufficient to discharge its liabilities by process of liquidation, even though it may not be able to pay its debts immediately as they become due, or to pay its depositors on demand? In what respect, if any, is the meaning of the term 'insolvency,' as applied to a chartered bank, differentiated from the meaning of that term as applied to the financial condition of an individual? Are sections 2306 of the Civil Code and 204 of the Penal Code to be construed together, and is the test of insolvency indicated in the former section to be applied in construing the latter?" Section 204 of the Penal Code, to which reference is made in the preceding question, reads as follows: "Every insolvency of a chartered bank, or refusal or failure to redeem its bills on demand, either with specie or current bank-bills passing at par value, shall be deemed fraudulent, and the president and directors shall be severally punished by imprisonment and labor in the penitentiary for not less than one year nor longer than ten years: Provided, that the defendant may repel the presumption of fraud, by showing that the affairs of the bank have been fairly and legally administered, and generally with the same care and diligence that agents, receiving a commission for their services, are required and bound by law to observe; and upon such showing the jury shall acquit the prisoner." The Supreme Court made the following answer to that question: "Within the meaning of Penal Code (1910) § 204, the insolvency of a bank is that condition in which its entire property and assets are insufficient to pay all of its debts. (*a*) If the entire property and assets of a bank are sufficient to discharge its liabilities, it is not insolvent within the meaning of Penal Code (1910) § 204, although it may not be able to pay its debts immediately as they become due, or to pay its depositors on demand. (*b*) Civil Code (1910) § 2306, which provides for the winding up of a bank by the State bank examiner

under certain circumstances therein declared, does not furnish a definition of insolvency to be applied in construing Penal Code (1910) § 204."

Under this clear and distinct ruling on the point raised, as found in the headnotes to the decision rendered by the Supreme Court, as well as under the rulings made in the body of the opinion, no discussion of these exceptions raised in the 22d and 23d grounds of the motion for a new trial is necessary, since the two excerpts from the charge complained of clearly and definitely instructed the jury that the bank was insolvent when unable to meet its liabilities as they became due in the ordinary course of business, "or, in shorter terms, when it can not pay its depositors on demand with promptness;" and again, that, "in short, as employed in the statute with reference to banks, the word insolvent means a present inability to pay depositors as banks usually do, and meet all liabilities as they become due in the ordinary course of business." Under such instructions the jury were authorized to convict the defendant (if the evidence otherwise warranted his conviction) upon proof merely that the chartered bank of which he was president had failed to meet its liabilities as *they became due* in the ordinary course of business, or that it had failed to pay some deposits on *demand,* in accordance with its promises. Thus they were authorized to find the bank insolvent, no matter how far in excess of its indebtedness the assets of the bank might be, if the assets happened not to be immediately available when demand was made by its depositors, or when liabilities matured in the ordinary course of its business. The whole subject has been so lucidly and ably discussed in the opinion rendered by Lumpkin, J., in behalf of the Supreme Court, that it would be a work of supererogation for us to attempt any discussion of the reasons upon which the interpretation of the word "insolvency," as used in the code section referred to, is based. This court had, as stated above, a firm conviction at the time the question was certified to the Supreme Court as to the correctness of the rule announced in the *Youmans* case, which proved to be in exact accord with the ruling ultimately made by that court, but, as in the case of the question concerning the constitutionality of section 204 of the Penal Code, we thought a matter of such wide importance should be referred to the Supreme Court to avoid even a remote possibility of any future conflict on this subject between.

that court and the Court of Appeals. In view of what is said above, it is apparent that the error of the trial judge in instructing the jury in effect that a bank was insolvent when it failed to pay its depositors on demand, or to meet its obligations as they matured in the ordinary course of business, was so material as to absolutely *require* a reversal of the judgment of the lower court overruling the motion for a new trial, unless from the record as a whole it could be reasonably and logically maintained that the verdict was demanded, and hence that the error was immaterial. It can not be said that a verdict of guilty is demanded, even where the evidence of insolvency is not contradicted by other evidence, if it be contradicted by the defendant's statement to the court and jury. It is true that one of the receivers, and the regular attorney for the bank, and another attorney, who was a member of a legal firm which had in their hands for collection a large claim against the bank, secured by collaterals which the bank had deposited, testified to their conclusion that in point of fact, and so far as their knowledge could be relied upon to establish its actual financial status, the bank was insolvent when its doors were closed, even according to the definition given by the Supreme Court. There were also various facts and circumstances which tended to support the conclusion reached by the witnesses referred to, and there is little if any testimony in the entire record that absolutely controverts the facts in evidence upon which the expert opinions were based, and in fact the defendant, in his statement at the trial, did not himself bring to the attention of the court any substantive facts to specifically controvert the proof submitted in behalf of the State on the question of insolvency. Nevertheless, the defendant in his statement explicitly denied that the bank was actually insolvent at the time its doors were closed; and hence the question as to whether it was insolvent at that time was an issue of fact for determination by the jury under all the evidence in the case, *including the statement of the accused*. In order to convict, the jury must have been satisfied beyond a reasonable doubt that the bank was insolvent at the time its doors were closed; and who can say that the jury would not have entertained such a doubt, growing out of the statement of the defendant, as might have led to his acquittal, if they had been permitted by the charge of the court to review and pass upon the question as to the insolvency of the bank, ac-

cording to the test laid down by the Supreme Court? The defendant in his statement at the trial (as appears on pages 251 and 252 of the record of file in this court) said: "Mr. Green expressed his opinion with reference to the solvency or insolvency of the Athens Trust and Banking Company. The Athens Trust and Banking Company, gentlemen, was not insolvent at the time it closed its doors; I didn't think so at the time, and I don't think so yet." Again (on page 238 of the record) we find the following statement from the defendant: "I consulted Mr. Wilkins several times in reference to our assets and liabilities. He will tell you he couldn't say the bank was insolvent at the time they closed, I am satisfied; he told me so. I couldn't swear it; I didn't believe it was—don't believe it 'yet." In another part of his statement (page 221 of the record) the defendant said: "I believed the Athens Trust and Banking Company to be absolutely solvent. My belief was based on the judgment of as good bankers as there were in Athens, as well as the knowledge of the paper and the customers which we had in our bank. When the bank suspended business I fully believed that we would be able to use the securities in some way and pay off the depositors and creditors, if necessary, and resume business at a later date." The defendant nowhere admitted the contrary, and it must be conceded that these statements amounted to an explicit denial that the bank was insolvent at the time the doors were closed, and especially to a denial that it was fraudulently insolvent, and, though there were statements from the defendant tending to minimize the value of his contention that the bank was actually solvent when it suspended business (in that the statements referred to indicated a limited knowledge on his part as to its actual condition, and hence lessened the value of his assertion of its solvency), the jury might nevertheless have elected to believe his statement that the bank was actually solvent, under the test fixed by the Supreme Court, and therefore might have concluded that the most essential allegation made in the indictment had not been proved beyond a reasonable doubt. It might be added that the weight which shall be given to the testimony of an expert is a question solely for the jury, and though the testimony of such a witness is entitled to great weight when his experience, honesty, and impartiality are not doubted by them, it is not, "however, so authoritative that the jury is bound to be governed by it. It is

advisory merely, and such testimony is intended to assist [the jury] in coming to a correct conclusion." See *Rouse* v. *State,* 135 *Ga.* 227 (69 S. E. 180), and many cases there cited. It is also well settled that a jury is not bound by the opinion of witnesses as to the value of a stock of merchandise, accounts, and choses in action, or as to the value of items of property constituting the assets of a bank (*Martin* v. *Martin,* 135 *Ga.* 162, 68 S. E. 1095; *Bonds* v. *Brown,* 133 *Ga.* 451, 66 S. E. 156). This rule does not apply where one testifies to knowledge of market value at a certain time and place. *McNamara* v. *Georgia Cotton Co.,* 10 *Ga. App.* 669 (73 S. E. 1092). See *Baker* v. *Richmond City Mill Works,* 105 *Ga.* 225 (31 S. E. 426); *Atlantic Railway Co.* v. *Howard Supply Co.,* 125 *Ga.* 478 (54 S. E. 530).

In grounds 19 and 20 it is complained that the court instructed the jury that the Athens Trust and Banking Company was a chartered bank within the meaning of the section of the code under which the indictment was preferred; and it is insisted that, under the facts set out in the record, the question whether this bank was a chartered bank within the meaning of section 204 was one for determination by the jury. The record discloses that the defendant and various other parties duly filed an application for a charter for the purpose of carrying on the business of a "trust and banking company" under the provisions of section 1903 et seq. of the Code of Georgia of 1895, and the acts amendatory thereof, and under the act of the General Assembly of Georgia, approved December 23, 1898 (Civil Code of 1910, § 2815 et seq.), providing for the incorporation of trust companies. The petition (a certified copy of which was introduced in evidence) sets forth that "the purpose and nature of the business of the proposed corporation is the organization and conduct of all such business as can be legally conducted by either or both trust companies or banks under the laws of Georgia," and that over twenty-five thousand dollars of the capital stock of one hundred thousand dollars has been actually paid in by the subscribers. The secretary of State duly issued to the petitioners, on April 10, 1911, a certificate of incorporation (a certified copy of which was introduced in evidence), empowering them to do a general trust and banking business under and by the name and style of Athens Trust and Banking Company, with its principal office in the city of Athens, county of Clarke, and State of

Georgia, with a capital stock of one-hundred thousand dollars, divided into shares of one hundred dollars each, subject to the duties and liabilities imposed by law.

While, as urged by the plaintiff in error, the judge thus took away from the jury the determination of the question whether or not the Athens Trust and Banking Company was a chartered bank within the meaning of section 204 of the Penal Code, he committed no error, since the fact and manner of its incorporation were not disputed, and under the rulings of this court and of the Supreme Court the trial court was authorized to take judicial cognizance of the fact that this institution was a chartered bank, since it was chartered by the State. See *Trueheart* v. *State*, 13 *Ga. App.* 661 (79 S. E. 755-756) ; *Jackson* v. *State*, 72 *Ga.* 28; *Davis* v. *Bank of Fulton*, 31 *Ga.* 69; *Saint Cecilia's Academy* v. *Hardin*, 78 *Ga.* 39 (3 S. E. 305) ; *Atlanta & W. P. R. Co.* v. *A., B. & A. R. Co.*, 124 *Ga.* 125 (52 S. E. 320) ; *Edenfield* v. *Bank of Millen*, 7 *Ga. App.* 645-647 (67 S. E. 896). And see *Dunn* v. *State*, 13 *Ga. App.* 314 (8), 320 (79 S. E. 170).

The court further charged the jury as follows: "When the State first shows that this bank was a chartered bank, as it has done, and that it was insolvent (whether that is done or not is a question for the jury), and became so while the defendant, Griffin, was president and director thereof, the law presumes that the insolvency was fraudulent, and the law then casts the burden upon the defendant to repel this presumption, and this he must do to your satisfaction as prescribed by the statute; otherwise if the State's proof has satisfied you of the defendant's guilt beyond a reasonable doubt,— you would be authorized to convict him." There was no error in this charge unless perhaps as to the degree of mental conviction necessary to authorize a verdict of guilty, since the statute specifically places upon a defendant indicted thereunder the burden of removing the presumption arising from the insolvency of the bank, by showing "that the affairs of the bank have been fairly and legally administered, and generally with the same care and diligence that agents, receiving a commission for their services, are required and bound by law to observe; and upon such showing the jury shall acquit the prisoner." This charge was clearly not objectionable for any of the reasons assigned.

Grounds 37, 38, and 39 of the motion for a new trial complain

that the court failed to charge the jury to the effect that if the Athens Trust and Banking Company operated and did business as a trust company as well as a bank, the defendant could not be convicted "if the operating and doing business as a trust company produced the insolvency of the bank." In our opinion these exceptions are without merit. To sustain this contention would effectually nullify section 204 of the Penal Code, for if it were necessary to show that the insolvency was caused by the operation of the business of the corporation as a bank, and not as a trust company, it would be well-nigh impossible to convict any person under that section.

The enormous record in this case, covering 435 pages of legal-cap in close typewriting, besides several hundred pages of briefs filed in behalf of the State and the defendant, indicates very clearly the nature of the burden that will be imposed upon the State by the grant of a new trial to the defendant, but this is aside from the real issue which we are required to pass upon, namely: Did the defendant have a fair and impartial trial, free from substantial errors which might have affected the result reached by the jury, and in accordance with the law of the land? This issue is all-important, since upon the orderly administration of the law depends the safety of every citizen, irrespective of the gravity of any offense with which he may be charged, and regardless too of whether or not the apparent preponderance of the testimony adduced at his trial may have been for or against him. This particular defendant may be guilty or innocent, but this is a matter that concerns in no degree the reviewing court, since our sole duty is to determine whether the case against the defendant was finally submitted to the consideration of the jury without errors reasonably calculated to materially prejudice his rights under the law as declared by the legislature and construed or interpreted by the Supreme Court and this court. So, in view of the specific ruling of the Supreme Court in this case on a question of vital importance to the defendant, we can not escape the conclusion that the defendant did not have such a trial as the law guarantees to every person brought before the courts (even without considering several alleged errors in the conduct of the trial which doubtless will not recur) ; and therefore the judgment overruling the motion for a new trial is

*Reversed.*