### 7073. GRIFFIN *v.* THE STATE.

1. Error was assigned upon the following instruction to the jury: "If you are satisfied of the guilt of the defendant, under the rules given you in charge and under the evidence, the form of your verdict may be, 'We, the jury, find the defendant guilty;' in which event he would be punished as for a felony; and that would be the penalty unless you should recommend that he be punished as for a misdemeanor, in which event, if your recommendation should be approved by the court, that would be the penalty, and in that event the form of your verdict would be, 'We, the jury, find the defendant guilty and recommend that he be punished as for a misdemeanor.'" This charge, when fairly construed with its context, did not contain any intimation or expression of opinion that the court thought the defendant was guilty of the offense charged in the indictment. Nor was it erroneous for any other reason assigned. The jurors get the law from the court. The judge did not instruct them that he had authority to sentence the defendant as for a misdemeanor in the event that they should find him guilty and fail to recommend that he be punished as for a misdemeanor. It would, in fact, have been error if the court had so informed them. *Blackman* v. *State.* 78 *Ga.* 592 (3 S. E. 418); *Cunningham* v. *State*, 103 *Ga.* 239 (29 S. E. 926); *Echols* v. *State*, 109 *Ga.* 508 (34 S. E. 1038). Accordingly, it will be presumed that the jury did not know that the court had this inherent right; and hence the charge excepted to could not have misled them into thinking that the court believed the defendant, under the evidence introduced, was guilty of the offense charged.

2. The following instructions were not error: (1) "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." (2) "Moral and reasonable certainty is all that can be expected in legal investigations. In civil cases the preponderance of testimony is considered sufficient to

produce mental conviction. In criminal cases a greater strength of conviction is necessary to justify a verdict of guilty."

3. It was not error to refuse to give the requested charge as complained of in the 11th ground of the amendment to the motion for a new trial, as the law embodied in this request was sufficiently covered by the charge given, as certified by the trial judge in qualifying his approval of this ground.

4. One who is related within the prohibited degrees to a mere depositor of a bank is not incompetent to sit as a juror upon the trial of the president of the bank on the charge of violating section 204 of the Penal Code.

5. Under the facts of this case, and especially the explanatory note of the trial judge, the court did not err in allowing in evidence, over the objection of the defendant, the declaration filed by the attorney-general of the State and the order of the judge of the superior court thereon, or the report of the trustee of the Crawford Oil Mill.

6. There is no substantial merit in any of the other grounds of the amendment to the motion for a new trial.

7. The court was authorized to take judicial cognizance of the fact that the Athens Trust & Banking Company was a chartered bank, within the meaning of section 204 of the Penal Code. *Griffin* v. *State*, 15 *Ga. App.* 520 (83 S. E. 891), and cases there cited. See also *Cason* v. *State*, 16 *Ga. App.* 820 (86 S. E. 644).

8. The evidence was ample to authorize a finding that the bank was insolvent, and that the insolvency was caused by the mismanagement and fraud of the defendant.

DECIDED JULY 11, 1916. REHEARING DENIED JULY 31, 1916.

Indictment for felony; from Clarke superior court—Judge W. E. Thomas presiding. October 16, 1915.

*Horace M. Holden, Thomas J. Shackelford, Thomas & Thomas, Shackelford & Meadow, Hamilton McWhorter Jr., W. W. Armistead,* for plaintiff in error.

*John B. Gamble, solicitor-general, Cobb, Erwin & Rucker,* contra.

BROYLES, J. We are becoming fairly familiar with this case, as this is its third appearance before this court. Practically all of the law involved was adjudicated by the former decisions of this court and the Supreme Court on the previous hearings. See *Griffin* v. *State*, 12 *Ga. App.* 615 (77 S. E. 1080), 15 *Ga. App.* 520 (83 S. E. 891); 142 *Ga.* 636 (83 S. E. 540, 55 L. R. A. (1915C) 716). So really the case has narrowed down to the question whether any reversible error was committed upon the last trial. The only headnote of this decision which in our opinion needs elaboration is the fourth. It appears that one of the jurors was

related to two of the depositors of the Athens Trust & Banking Company, and that this relationship was not known to the defendant or his attorneys until after the verdict was rendered. It is also shown that the juror did not know that these relatives of his were depositors in the bank until after the verdict. A depositor is a mere creditor of a bank, and we know of no authority which holds that a juror who is related to a mere creditor of a corporation would be disqualified from trying a case, either civil or criminal, wherein the corporation or its creditors were interested. The learned and indefatigable counsel for the plaintiff in error have not furnished us a single authority from the courts of this State or elsewhere which so holds.

In *Atkinson* v. *State,* 112 *Ga.* 411 (37 S. E. 747), it was held: "The fact that a juror is closely related to one acting as a partisan for the State in a criminal prosecution affords no ground of challenging such juror for cause." By an examination of the original record of that case, on file in the office of the clerk of the Supreme Court, the following facts are disclosed: The defendant was arraigned in the city court of Eastman for the offense of assault and battery. He was convicted, and filed a petition for certiorari to the superior court. In his petition he alleged that "the court refused petitioner's request to purge the jury as to relatives of W. B. Sapp and S. B. Coody, the reason for so requesting and the reason then and there given being that the said Sapp and Coody were actively engaged in assisting in the prosecution of said case, they not being attorneys, and although their names did not appear of record, nevertheless to all intents and purposes being public prosecutors in the case, and then and there in the presence of the court and within the knowledge of the court assuming that rôle and doing all possible to assist the solicitor of said court in the prosecution of said case by assisting in the striking of the jury, framing questions and suggesting witnesses, and in every other way possible for public or volunteer prosecutors to assist in the conduct of a legal investigation. Upon the call of the case the said Sapp and Coody left their seats in the audience, came within the bar, and took seats beside the solicitor, and proceeded to assist in the strike of the jury. This coming to the attention of petitioner, he made the motion to purge as above, which the court overruled, the vice of said ruling being that it left on the panel of jurors, from

which the petitioner had to strike, one son and one brother of said W. B. Sapp. The said Sapp and Coody remained by the solicitor during the progress of the case, and continued in the acts and things as above specified, and, upon the suspension of the trial of the case by the court for that purpose, retired to consult with the witnesses and the solicitor for the State. Petitioner assigns the ruling of the court refusing to strike the relatives of said Sapp included, and purge the jury as to their relatives, as erroneous." It was in answer to the above assignment of error, and in view of the aforesaid allegations in the petition for certiorari, that the Supreme Court held that "the fact that a juror is closely related to one acting as a partisan for the State in a criminal prosecution affords no ground of challenging such juror for cause." This was a unanimous decision by six Justices, and, having never been overruled or modified, is binding authority on this court.

All of the cases relied on by the defendant are clearly distinguishable by their facts from the instant case. In *Lyens* v. *State,* 133 *Ga.* 587 (66 S. E. 792), the relatives of the juror in the case had *personally* contributed to a fund that was used to employ an attorney to assist the solicitor-general in the prosecution of the defendant, and it was held that for that reason they would be considered as volunteer prosecutors, and that one related within the fourth degree to them was not competent to sit as a juror on such trial. On the contrary, the instant case shows the following facts: Some of the depositors and stockholders of the bank met and appointed a committee of five to procure counsel to assist the solicitor-general in prosecuting the officers of the bank, and this committee employed for that purpose the law firm of Cobb & Erwin; that one of the depositors related to the juror had "several dollars" in the bank at the time it failed, and the other one had therein the large (?) sum of *fifteen cents;* that neither of the two depositors in question had any connection whatever with the employment of counsel to assist the solicitor-general in prosecuting the defendant, or consented for their funds on deposit in the bank to be used for such purpose; that they never attended any meeting of the depositors or stockholders of the bank, knew nothing of the employment of the above mentioned law-firm, never authorized the appointment of any committee by the depositors or stockholders to employ the firm, and never consented thereto or in any way rati-

fied or confirmed the employment of such counsel. These undisputed facts clearly distinguish the case at bar from the *Lyens* case, supra. Among the cases cited by counsel for plaintiff in error there are two which are more nearly like the instant case than any of the others. Those are *McElhannon* v. *State, 99 Ga.* 672 (26 S. E. 501), and *Bank of the University* v. *Tuck,* 107 *Ga.* 211 (33 S. E. 70). In the former it was held that on the trial of one for mutilating and destroying the books of a corporation with intent to defraud and injure it, persons related to its *stockholders* within the, prohibited degree were not competent to serve as jurors; and in the *Tuck* case it was held that persons related within the prohibited degree to *stockholders* of a bank, or to *others who were pecuniarily interested in the value of its stock,* were incompetent to serve as jurors on the trial of an action brought by the bank. It will be observed, however, that in both of those cases the disqualified juror was related to *stockholders* of the bank, and not to mere depositors. It is true that in the *Tuck* case the holding is that persons related to stockholders of a bank, "or to others who are pecuniarily interested in the value of its stock," are incompetent to serve as jurors, but it can not be said that a mere depositor of a bank is pecuniarily interested in the stock of the bank. In our judgment the rulings in the foregoing cases should not be so extended as to hold that one who is related within the prohibited degree to a mere depositor of a bank, who is nothing more than a creditor of the bank, would be an incompetent juror to sit in a case in which the bank or its stockholders were interested. Such a holding would in effect be a ruling that in any case, civil or criminal, a new trial must be granted, where it is discovered after the trial that one of the jurors is related, by blood or marriage, within the prohibited degree, to any creditor, however, small, of the winning party. Simply to state such a ruling shows its absurdity; and yet, if we reverse the judgment in this case on this ground, a direct precedent for it would be furnished.

Upon the first arraignment of the defendant in this case, he pleaded guilty of the offense charged in the indictment, with the understanding, as he alleged, that he was to be sentenced as for a misdemeanor. The learned trial judge, however, not being a party to this "understanding," the defendant was sentenced to the penitentiary, and on an appeal to this court the sentence was

vacated, and the defendant was allowed to withdraw his plea of guilty and go before the jury on a plea of not guilty. Since then the defendant has twice been convicted by a jury of the vicinage of felony charged in the indictment. On an appeal from his first conviction by the jury, this court granted him a new trial for material errors which occurred during the trial. This time, after a careful review and consideration of the voluminous record, and of the many assignments of error, we are of the opinion that the verdict is amply supported by the evidence, and that no errors occurred upon the last investigation which necessitate a second new trial. *Judgment affirmed.*

HODGES, J., dissenting. I respectfully dissent from my colleagues in the foregoing opinion.

It appears that the juror Autrey was related within the prohibited degrees to two of the depositors of the Athens Trust & Banking Company. The accused was placed upon trial upon an indictment charging a violation of section 204 of the Penal Code, as president of the bank, and it is admitted that two relatives of the juror were depositors, and, therefore, necessarily parties at interest in the affairs of the bank, and that this was not known to the accused or his counsel. It was testified by the witness Barnett that the husband of one of the depositors was present at a joint meeting of the stockholders and depositors of the bank. The depositors and stockholders, through a committee, employed certain counsel to assist in the prosecution of the accused, and said counsel were paid by the court through its receivers, out of the funds held by the court for distribution. One of the attorneys so employed testified: "My firm were not the attorneys for the receivers. We were employed by the depositors' committee and the stockholders' committee of the bank. I never had anything to do with those preliminary matters when the warrants were first gotten out against Griffin. I never came into the case until after the indictment was found. We hope our fee will be paid out of the receivership fees. We haven't got anything to date." It is clear from the above that the firm engaged to assist the solicitor-general in the prosecution of the accused was employed jointly by the stockholders and depositors of the bank, and that the money paid to counsel was paid out of the funds of the bank, in which the depositors were vitally interested.

A juror related to a party at interest within the prohibited degree in the trial of any cause is not competent to pass upon the issue involved. It is not a question as to whether or not the juror acted improperly in the rendition of the verdict, but whether or not it is likely that his relationship to a party at interest in all human probability might affect his finding. "There is no rule by which the disqualification of a juror is to be determined other than the existence of such interest on the part of the juror as probably will affect his finding, thereby contributing to the advantage of one of the parties to the detriment of the other." Numerous instances of interest on the part of jurors, which have been the subject of adjudication, may be cited. *Temples* v. *Central of Georgia Railway Co.,* 15 *Ga. App.* 115, 123 (82 S. E. 777). In *Anderson* v. *State,* 63 *Ga.* 675, it was held that the bail was incompetent as a juror to try the accused, for the reason that the accused might escape during the trial of the case, thereby rendering the surety liable for the bail bond. In this connection Justice Bleckley said: "Suppose the prisoner had concluded to leave the court and the country after the jury had retired, and this juror, his bail, had been of the panel charged with his case, and by any chance he had heard that his principal was gone, there would have been an improper motive to return a verdict of not guilty." In *Lyens* v. *State,* 133 *Ga.* 588 (66 S. E. 792), the court held that when one contributes to a fund to be used in employing an attorney to aid the solicitor-general in a prosecution, and the attorney does render such aid, the person so contributing to the payment of such counsel is to be considered a voluntary prosecutor, and the juror who is related within the "fourth degree" (?) to such a person is not competent to sit upon the trial of the case. On the hearing of the case last cited the incompetent juror testified that he did not know of the disqualification, and the court, through Holden, J., said: "Was Fields disqualified as a juror by reason of his relationship to the Stricklands? We think he was. The Stricklands may not have been attorneys, and for that reason could not have appeared and assisted the solicitor-general in asking questions of the witnesses and in addressing the jury urging them to convict the defendants. They employed counsel to render this aid to the prosecution . . . The Stricklands themselves did not render any service to the State, but their zeal and interest were enlisted on

the side of the prosecution to the extent of parting with their money to obtain the services of another to appear in the case as their representative, who could, perhaps, render services towards securing the conviction of the defendants of more value than they themselves could."

The right of jury trial can not be too carefully guarded, and a proper administration of public justice requires that all jurors should be free from even the suspicion of interest, bias, or prejudice. It matters not that the juror so affected did not know of the disqualification. "On the trial of an indictment for mutilating and destroying the books of a corporation with intent to defraud and injure it, persons related to its stockholders within the prohibited degree are not competent to serve as jurors; and in determining whether or not a new trial should be granted to the accused because of relationship between jurors and stockholders, the fact that the former at the time of the trial were ignorant of any relationship between themselves and some of the stockholders is immaterial." *McElhannon* v. *State*, 99 *Ga.* 672 (26 S. E. 501). In the case of *Bank of the University* v. *Tuck*, 107 *Ga.* 211 (33 S. E. 70), the court said: "Persons related within the prohibited degree to stockholders of a bank, or to others who are pecuniarily interested in the value of its stock, are incompetent to serve as jurors on the trial of an action brought by the bank; and where persons so related, without the knowledge or consent of the defendant, or his counsel, actually serve as jurors on such a trial, another hearing should be had notwithstanding ignorance on the part of the disqualified jurors of the fact that their kinsmen were stockholders, or pecuniarily interested in the stock of the bank." Can there be any distinction between the disqualification of a juror related to a stockholder of a bank and that of a juror related to a depositor of a bank? The assets of this bank were in charge of the court's officers, and they belonged to the creditors of the bank, its stockholders and depositors. The receivers represented all the parties at interest, and the fee paid to counsel for the prosecution was paid out of the funds held by the court through its receivers, representing all the parties at interest. Surely there can be no difference in principle between the last two cases cited and the case at bar. In *Beall* v. *Clark*, 71 *Ga.* 818, it was held that a new trial should be granted because one of the jurors was a

half-brother to a witness, who had been promised a position as overseer in the event his testimony resulted in the recovery of certain plantations, although the witness swore that the juror, his half-brother, had no interest in the matter, Justice Hall said in that case: "Trial by jury can not be too carefully guarded, not only to protect it from unfairness, but from any uncertainty on that score. Jurors should be above suspicion. Omni exceptione majores." And this court, in the case of *Temples* v. *Central of Georgia Railway Co.,* supra, after a most elaborate review of the authorities upon this question, quoted with approval the case of *Beall* v. *Clark,* supra, and through Russell, C. J., said: "Ever since the organization of this court it has been our endeavor to adhere rigidly to the principle so well stated by Justice Hall."

It will be observed from a persual of *McElhannon's* case that the corporation was not the prosecutor, and in the case at bar the corporation was not the prosecutor, but the rights of the depositors were at issue, and they as parties at interest were voluntary prosecutors. In *Temples* v. *Central of Georgia Ry. Co.,* supra, Russell, C. J., citing *Gormley* v. *Laramore,* 40 *Ga.* 253, said: "Both interest and bias are disqualification propter affectum; and hence the subject of disqualification and its probable effect can be inquired into after verdict." If the court can take cognizance of the existence of more than one motive, "and there is any uncertainty as to which interest, if any, may affect the juror, there is no less reason for his rejection than if his particular bias were clearly shown; the purpose of the law being to provide for a trial by jurors altogether impartial." *Temples* v. *Central of Ga. Ry. Co.,* supra. "A big part of the battle is the selection of the jury, and an impartial juror is the corner-stone of the fairness of trial by jury." *Melson* v. *Dickson,* 63 *Ga.* 682, 686 (36 Am. R. 128). This principle is recognized in the case of *Moore* v. *Farmers' Mutual Ins. Asso.,* 107 *Ga.* 199 (33 S. E. 65).

If the accused was guilty as charged in the indictment, he certainly injured the depositors to whom this juror was related within the prohibited degree, and it seems to be well settled that the relationship which disqualifies a juror need not be a relationship to an actual party to the case, provided it be to one interested in the result of the case. Under the law the accused was deprived of a substantial right, a right which the law guarantees to him, and on account of the incompetency of this juror the trial was nugatory.

ON MOTION FOR REHEARING.

BROYLES, J.   The learned counsel for the plaintiff in error insist that this court, in rendering its decision of affirmance of the judgment of the lower court, must have overlooked the note of the judge set out on pages 309 and 310 of the record.   The pertinent portion of the note is as follows:   "There was no motion made touching the qualification or disqualification of the jurors by reason of being related to the depositors, or being depositors, and, the court not having been called upon to make any ruling thereon, and counsel for defendant and the State having acquiesced in permitting the jurors to stand aside who were related to depositors, and counsel for defendant having authorized the court and requested the court not to require those jurors who had been duly drawn from the jury box, to serve as tales jurors upon the trial of said case, to come into court and make known to the court their relationship to the depositors; and for these reasons quite a number of said jurors were not required to come in court.   During the progress of impaneling the jury to try said case, whenever it appeared that a juror was a depositor or related to a depositor, he was permitted to stand aside on account of the acquiescence of counsel for defendant and the State without the court being called upon to make any ruling thereon."   In deciding the case we carefully considered this note, but did not view it in the same light as that in which counsel for the defendant evidently saw it.   In our opinion, this note plainly shows that the defendant, by his counsel, upon the trial, waived the question of whether the tales jurors who were put upon the jury, among whom were the two jurors related to depositors, were so related.   This being true, the accused will not be heard, after the trial, to raise the very point that he expressly waived upon the trial.

*Motion for rehearing denied.*