## 7848.  SPENCE v. THE STATE.

BLOODWORTH, J.  1. In this case the indictment is similar to that in the case of *Stapleton* v. *State*, 19 *Ga. App.* 36 (90 S. E. 1029), and the questions raised as to the disqualification of the presiding judge and of the solicitor-general, the legality of the term of court, and the sufficiency of the indictment are controlled by the rulings in that case. See also *Griffin* v. *State*, 18 *Ga. App.* 402 (89 S. E. 625).

2. Under the decision in the *Stapleton* case, supra, the court did not err in refusing, on motion of the defendant, to ask the jurors whether or not they were related by blood or marriage to depositors in the Bank of Whigham.

3. In the trial of a criminal case, where the jurors present have all been put upon the defendant, and it becomes necessary to procure other jurors, it is entirely within the discretion of the presiding judge to draw the tales jurors from the jury-box, or to order the sheriff to summon them from among persons qualified by law to serve as jurors. Penal Code (1910), §§ 862, 863, 996; *Ford* v. *State*, 12 *Ga. App.* 228 (3) (76 S. E. 1079).

4. A juror who had answered the voir dire questions, and was put upon the court as a trior, and testified that he had no fixed opinion that would not yield to testimony, without regard to anything that he might

have heard, was properly held competent. *Thomas* v. *State*, 144 *Ga.* 298 (2) (87 S. E. 8); *Norton* v. *State*, 137 *Ga.* 842 (74 S. E. 759). "But this is unimportant, for the finding of the judge upon the subject of a juror's prejudice or bias, or the absence of disqualifying prejudice or bias, is not subject to review." *Redfearn* v. *Thompson*, 10 *Ga. App.* 551 (4), 556 (73 S. E. 949); *Turner* v. *State*, 114 *Ga.* 421 (40 S. E. 308).

5. Letters signed "O. C. Spence, President," the introduction of which is complained of in the 9th and 10th grounds of the motion for a new trial, and which were introduced to show the official capacity in which the defendant was acting, related to the charge in the second count of the indictment, and, the court having withdrawn this count from the consideration of the jury, and no subsequent motion having been made to exclude these letters, their admission could not have been harmful to the defendant, under the qualifications in the charge of the court relative to the evidence introduced to support the second count; and especially is this true in view of other evidence, unobjected to, as to the same fact.

6. The court did not err in admitting in evidence the minutes of the annual meeting of the stockholders of the Bank of Whigham, held January 4, 1913, showing the election of O. C. Spence as a director; the minutes of the special meeting of the shareholders of the bank, held September 15th, 1913, showing that the call was issued by Vice-President O. C. Spence, and showing that the number of the board of directors was reduced from seven to five, and that O. C. Spence was retained as one of the five; sheets 1, 2, and 3 of the by-laws of the Bank of Whigham, showing that the bank was to be governed by a board of directors elected by the stockholders, and providing for election of president, vice-president, and cashier, by the board of directors; and the page of the general ledger of the Bank of Whigham, dated February 11, 1915.

7. The letter addressed to L. A. Boyd, dated October 23, 1914, and signed "O. C. Spence, Vice-President," was properly admitted in evidence. This, along with the evidence of several witnesses that the defendant was taking part in the conduct of the bank at this time, was relevant to show the conduct of the defendant, and that he was at that time holding himself out as an officer of the bank.

8. The cashier's checks referred to in the 15th ground of the motion for a new trial were not only relevant testimony, but were not inadmissible for the reasons assigned.

9. The evidence referred to in the 17th ground of the motion for a new trial having been properly admitted in evidence, the court rightly refused to rule it out for the reasons alleged in that ground.

10. After the page from the general ledger of the bank had been admitted in evidence, there was no error harmful to the defendant in allowing a witness to read in the hearing of the jury a list of the assets of the bank as listed on that page.

11. Grounds 19 to 39, inclusive, ground 41, grounds 43 to 51, inclusive, and grounds 53, 54, 55, and 63 of the motion for a new trial are all based

upon alleged errors in admitting testimony of W. T. Crawford, who was allowed to testify as to how the books of the Bank of Whigham were kept, and as to the irregularities in the books, and the meaning of certain items therein, and to give his opinion that at a certain time the assets of the bank were impaired, and that the bank was insolvent at a certain date, and to give his opinion of the value of certain notes which he found in the bank. That he qualified as an expert on banking is not denied. The code of this State contains the following: "The opinions of experts, on any question of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses." Penal Code, § 1048; Civil Code, § 5876. "The testimony of an expert, as to his opinion as such, is admissible upon any matter, if the opinion given related to scientific or technical knowledge." *McClendon* v. *State*, 7 *Ga. App.* 784 (68 S. E. 331). "A duly qualified expert may testify as to the meaning of an entry in books concerning business transactions, where the meaning of such entry is not apparent to the average juror." 5 Enc. Ev. 553. "Where facts can be ascertained only by an examination of a large number of details on books of account, it is permissible for an expert accountant, who has made an examination of the books and figures, to testify as a witness and to give a summarized statement of what the books show, provided the books themselves are made accessible to the court and to the parties. Moreover, any error in the admission of evidence of this kind is cured where the books themselves are introduced in evidence and it is admitted that they show the same facts testified to by the witness." *Cabaniss* v. *State*, 8 *Ga. App.* 130 (14) (68 S. E. 850). "Solvency or insolvency is a matter admitting of opinion evidence." *Cabaniss* v. *State*, supra, 130 (17), 145; State *v.* Cadwell, 79 Iowa, 432 (3), (4) (44 N. W. 700).

12. The 38th ground of the motion for a new trial complains that the court erred in allowing "the introduction of the entries of the cash book and the blotter book of the Bank of Whigham of the date of June 9, 1913," the ground of objection being that "it had not been shown that this defendant made the entries in them, and it had not been shown that he was an officer in said bank at that time." It was not necessary to prove that the defendant in person made the entries referred to, before they would be admissible; and the evidence from the minutes of the bank shows that O. C. Spence was elected a director on January 14, 1913, and was re-elected on January 13, 1914. The court therefore did not commit error in allowing in evidence the books referred to.

13. Ground 40 of the motion for a new trial alleges error because "the court permitted the State to introduce in evidence the sheet showing the individual account of O. C. Spence in the Bank of Whigham, as of December 30th, 1912." As there is nothing to show what the sheet referred to contained, and each ground of a motion for a new trial must be complete within itself, there is not enough in this ground for this court to determine whether or not the introduction of the sheet was prejudicial to the plaintiff in error.

14. The transaction referred to in ground 42 of the motion for a new trial

occurred on January 13, 1913, the day before the defendant was elected a director, and is relevant as a part of the testimony to show the condition of the bank at that time. The expert witness was properly allowed to testify as to the "remittance sheet" referred to in this ground.

15. The letter referred to in ground 52 was not inadmissible for the reasons urged.

16. The cashier's check referred to in ground 56, dated October 16, 1913, was properly admitted in evidence, the minutes of the bank showing that at that time the defendant was a director thereof. The bank expert was properly allowed to testify as to the matters referred to in this ground.

17. The assignments of error referred to in grounds 57, 58, and 59, in reference to the introduction of certain checks, and the error assigned in ground 61 as to the value of certain stocks, are not sufficiently definite to show whether their admission in evidence was harmful to the plaintiff in error; and no legal reason was urged against the admission of this testimony.

18. There was no error harmful to the defendant in admitting the testimony complained of in the 59th ground of the motion.

19. A portion of the evidence objected to in ground 62, relating to the expenses of the bank for 1913, was clearly relevant. Even granting that the remaining portion was inadmissible, the objection went to the evidence as a whole, and the objection was properly overruled.

20. None of the remaining grounds of the amended motion for a new trial being specifically urged in the brief of counsel for the plaintiff in error, they will be treated as abandoned. *Muse* v. *Hall*, 18 *Ga. App.* 651 (3) (90 S. E. 222); *Youmans* v. *Moon*, 11 *Ga. App.* 66 (4) (74 S. E. 710); *Jefferson* v. *Perry*, 18 *Ga. App.* 690 (90 S. E. 366); *James* v. *Boyett*, 19 *Ga. App.* 157 (91 S. E. 219); *Rounsaville* v. *Camp*, 19 *Ga. App.* 336 (91 S. E. 446); *Mills* v. *State*, 19 *Ga. App.* 623 (91 S. E. 918).

21. There being proof of insolvency of the bank, the evidence authorized the verdict.

*Judgment affirmed. Wade, C. J., concurs. George, J., concurs specially.*

DECIDED MAY 11, 1917.

Indictment for fraudulent insolvency of bank; from Grady superior court—Judge Cox. August 21, 1916.

*M. L. Ledford, Roscoe Luke,* for plaintiff in error.

*R. C. Bell, solicitor-general, F. A. Hooper & Son, W. V. Custer,* contra.

GEORGE, J., concurring specially. While the decisions of this court, hereinafter referred to, are controlling, I can not agree that those decisions are sound, and I am unable to concur in certain conclusions reached by my colleagues. The defendant was convicted under an indictment charging fraudulent insolvency of a chartered bank, as defined in section 204 of the Penal Code of 1910. The solicitor-general who prosecuted the case was a de-

positor in the alleged insolvent bank; the presiding judge was related within the third degree to a named depositor in said bank; several of the grand jurors who returned the bill of indictment against the accused were related within the prohibited degrees to certain depositors of said bank; and the court refused, upon timely motion of counsel for the accused, to inquire of the trial jurors whether or not they were related by blood or marriage to the depositors in said bank. · I can not agree to the proposition that one who is related within the prohibited degrees to a depositor of an insolvent bank is competent to sit as a juror upon the trial of an officer of such bank charged with violating the provisions of section 204 of the Penal Code. It must be admitted that this precise question is foreclosed against the accused by the decision in *Stapleton* v. *State*, 19 *Ga. App.* 36 (91 S. E. 1029), and · by the majority opinion in *Griffin* v. *State*, 18 *Ga. App.* 402 (4) (89 S. E. 625). The opinion of the dissentient judge in the case last cited seems to be conclusive. To what is there said the writer wishes to add that section 204 of the Penal Code was enacted primarily for the benefit of the public,—that is, creditors, including depositors. Protection to this latter class of creditors was the primary purpose of the legislature in the passage of this statute. Stockholders, as such, are amply protected against the criminal acts of the officers and directors of a chartered bank by the several provisions of our code.

In this case the court charged the jury as follows: "The stock of a bank is a liability that should be included and taken into account in determining the question of its solvency." This, in the opinion of the writer, is an erroneous statement of the law. It must be admitted that in the ′ *Stapleton* case, supra, this precise question was also ruled upon adversely to the contention of the accused, although in the opinion in that case the question is not discussed. The majority opinion in the case at bar treats the assignment of error upon this charge as having been abandoned. The 20th division of the opinion is as follows: "None of the remaining grounds of the amended motion for a new trial being specifically urged in the brief of counsel for the plaintiff in error, they will be treated as abandoned." The exception to the portion of the charge quoted is one of the "remaining grounds of the amended motion for a new trial." If the question were not one of such vital importance, I would be disposed to agree with my brethren in

the conclusion that counsel for the plaintiff in error have not specifically urged before this court the complaint made as to the charge of the court quoted above. If, however, the tendency is to disregard purely technical objections when urged by defendants in the trial of criminal cases, much more should the reviewing court refuse to sanction technical objections when urged by the State against the consideration of a vital and controlling question involved in the case. While counsel for the present plaintiff in error have not in their briefs specifically argued the exception taken to the charge of the court under consideration, this failure of counsel should be interpreted to mean that they regard the question as fully presented to this court in the companion case of *Stapleton* v. *State,* supra. They expressly state the contention and disclaim any intention to abandon it. It is proper to note that counsel for the present plaintiff in error were also counsel for the defense in the *Stapleton* case, in which the question here referred to was fully argued. I therefore think that we should consider this exception.

Does this charge lay down a correct test by which the solvency of a chartered bank is to be determined? Is a bank solvent only when its assets are sufficient to pay not only its creditors, including depositors, but its stockholders as well? If this rigid test is to be applied, every bank, immediately upon its organization, will be found to be insolvent. Furniture and fixtures and general supplies must be purchased by every bank commencing business. A newly organized bank would hardly, in any case, be able to dispose of its furniture and fixtures, to say nothing of its general supplies, at cost. The officers and directors of a bank usually own a large part of its capital stock. It is stretching the law too far to say that bank officers and directors owning a large percentage of the stock of the bank become criminals the moment its assets fall below its liabilities, including the liability of the bank upon the stock held by such officers and directors. The individual stockholders and the corporation are not one and the same, it is true, but if the officers of a bank, who own practically its entire capital stock, are able to pay, out of its assets, all creditors of the bank, they ought neither to be presumed nor held guilty of the offense declared in section 204 if the assets of the bank are insufficient to pay the stockholders, including themselves. If, on account of the fraudu-

lent acts of the officials, the assets of the bank are insufficient to pay the general creditors of the bank, including depositors, such officials are criminally liable. If, through the criminal conduct of the officers and directors of the bank, its capital stock is impaired, the stockholder has his recourse against such officials under other sections of our Penal Code. The capital stock, it is true, is both an asset and a liability upon the civil side of the law, but to regard the stock as a liability in determining the solvency of a bank under the Penal Code section referred to is, in the opinion of the writer, untenable. No consideration of public policy requires such a construction of this section of the code. The stockholders in a banking corporation become such for pecuniary gain to themselves. In no other corporation are stockholders, by any section of the code, given the benefit which the charge of the trial court in this case affords the holders and owners of bank stock. Sound public policy will protect the owner of bank stock no further than the owner of any other corporate stock. He must look for his protection to the embezzlement statutes and other statutes enacted for his benefit, and to the honesty of the officials of his own choosing. Further, an individual is not considered insolvent so long as he is able to pay his creditors. A corporation should not be considered insolvent so long as the corporation is able to pay, out of its assets, including its original capital stock, all of its creditors. The stockholder is in no proper sense a creditor of the bank. He is the owner of a portion of the capital stock of the bank.

For the reasons stated above, I do not think the defendant has had a fair trial. He was entitled to a jury whose kinsmen had lost nothing in the failure of the bank. He was entitled to an instruction by the court to the effect that the bank was solvent if its assets, administered in due course and with ordinary skill and diligence, were sufficient to pay its debts, *excluding* its stock liability. The decisions in *Griffin* v. *State,* and *Stapleton* v. *State,* supra, should be reviewed and overruled. See, in this connection, the decision of the Supreme Court, in reference to certified questions from this court, in the *Griffin* case, 142 *Ga.* 636 (4), 646 (83 S. E. 540, L. R. A. 1915C, 716, Ann. Cas. 1916C, 80).